STATE, DEFENDANT IN ERROR, v. ANNA VALENTINA, PLAINTIFF IN ERROR.

Argued November 15, 1904—Decided March 6, 1905.

1. If, at the trial of a person for murder, the undisputed testimony clearly establishes the fact that the defendant is guilty of that crime, it is not error for the court to instruct the jury that the questions of self-defence and manslaughter are not open for consideration.
2. If, at the trial of a person for murder, the counsel of the defendant, in opening the defence, states to the jury that the defendant, when arraigned in open court, made confession of the commission of the crime, it is not error for the court to refrain from contradicting the statement when such a contradiction is not requested.

3. A plea of not guilty entered on an indictment for murder is not, in this state, inconsistent with a statement that the defendant, upon arraignment, confessed the crime.

4. The exercise of judicial discretion at a criminal trial is not subject to review on error, except in cases where the defendant has (in the words of our statute), "suffered manifest wrong or injury * * * in the denial of any matter by the court which was a matter of discretion," and in this statute denial implies request.

5. It is not erroneous for the judge presiding at a criminal trial to make to the jury such comments and suggestions respecting the evidence as judicial discretion may dictate.

On error to the Bergen Oyer and Terminer.

For the state, *Ernest Koester*, prosecutor of the pleas.

For the defendant, *James M. Trimble* and *Nathan Kussy*.

The opinion of the court was delivered by

DIXON, J. At the April Term, 1904, of the Bergen Oyer and Terminer, the defendant was convicted of murder in the first degree for the killing of Rosa Salza, on March 10th, 1904. The present writ of error is intended to bring under review alleged errors committed at her trial, and the entire record of the proceedings is certified with the writ, pursuant to the statute.

The chief complaint on her behalf, put in various forms by the first, second, third, sixth, seventh, eighth, tenth, eleventh, twelfth, thirteenth, fourteenth, fifteenth, sixteenth and twenty-second assignments of error or causes for reversal, is that at the trial it was assumed by her counsel, the court and the jury that she was guilty of murder, thus eliminating from the case the questions whether she had acted in self-defence, or was guilty of manslaughter only, and leaving as the sole question for determination the degree of murder for which she should be convicted, whereby she was denied the benefit of her plea of not guilty and of the presumptions attendant thereon.

The allegation forming the basis of this complaint, that

her guilt of murder was assumed, is far from the truth. The evidence laid before the court and jury by the state, if believed, clearly proved her to be guilty of murder, and then, being herself produced as a witness on her own behalf, she testified to facts which, with the undisputed circumstances previously established, legally constituted guilt of that crime.

The testimony of the defendant was that in the afternoon of March 10th, Rosa Salza, standing at the window of her room in the third story of the house where she lived, abused the defendant, who was in the street, by calling her all sorts of opprobrious names; that the defendant then went away a short distance, but on hearing Rosa calling, and thinking that perhaps she wanted to make friends, the defendant returned, went into Rosa's house, knocked on the door of her room, and Rosa opened it. The following excerpts give her statement of the subsequent occurrences:

"*Q.* When you went in the door, where was Rosa when you got inside of the door?

"*A.* She was near by the door; she had a baby in one arm.

"*Q.* Then what did you say to her?

"*A.* I said to her, 'Rosa, don't call me all those bad names, because if it is not to-day, it may be to-morrow, that I am going to get with Mike again.'

"*Q.* Well, what did Rosa say then?

"*A.* 'I have got to break your face, and when my husband comes home to-night I will have to do a good many more things to you.'

"*Q.* Did Rosa do anything then?

"*A.* I told her if she wants to raise any trouble—I told her to put the child away, and she had the knife in her hand right behind her dress, and when I seen that she had the knife, and I seen she was going to stab me, and I takes—to grab her by the hair, and before she stabbed me I took the knife away from her and stabbed her.

"*Q.* Did she try to stab you that night before you stabbed her?

"*A*. Why, she had the knife that way [indicating] behind her dress, and her baby she had on her arm.

"*Q*. So you took the knife away from her, then?

"*A*. Yes, sir.

"*Q*. Is that the knife?

"*A*. I do not recollect if that is the knife, but I killed her with a knife similar to that one, the same length.

"Cross-examination.

"*Q*. Did you have any cuts on your hands, Anna?

"*A*. You saw me the next day in the jail and I did not have any cuts on my hands."

Additional circumstances, testified to by other witnesses and not denied, were that a neighbor, on going into the room, saw Rosa lying on the floor on her back dead, with her hair down over her face, and the defendant stabbing her in the breast; saw, also, Rosa's twin babies, about three months old, lying one on the bed and the other on the floor near its mother; that shortly afterwards the physicians found on Rosa's body many wounds, viz., fifteen wounds around the neck, some of them three inches deep, cutting open both of the external jugular veins; three wounds on the breast; two slight wounds on the face, a deep gash near the top of the head, and almost numberless wounds about the fingers, hands and wrists.

Thus homicide with a deadly weapon persistently and cruelly used was shown, without evidence of any fact appearing to justify the exercise of the right of self-defence, and without such provocation as in any view of our law would render the homicide manslaughter. For it was not alleged that Rosa made any attempt to use the knife which she held behind her dress. Her attitude, with her baby upon her arm, was one of appeal against violence, and the knife held behind her dress seemed at most only a means of defence. Such provocation as she had previously given was by word of mouth only, and therefore was legally ineffectual to afford mitigation of the crime.

We think that upon the whole evidence the plea of not

guilty, with its attendant presumptions, was fully overcome, and the only question remaining for decision was as to the degree of murder.

Another complaint, presented in the fourth and fifth assignments, is that the defendant's counsel, in opening the defence, declared that "the defendant, when arraigned in open court, made confession of the commission of this crime;" that it thereupon became the duty of the presiding judge to correct this statement and inform the jury that there was no such confession before them.

Whether this statement of defendant's counsel is true or not we have no means of determining, further than this, that it must have been made under the counsel's sense of responsibility to his client and to the court, and there is no indication of its falsity. The defendant's present counsel urges that the plea of "not guilty" standing on the record is such an indication; but it is not. Our statute (*Pamph. L.* 1898, *p.* 794, § 107) declares that if upon arraignment a person indicted for murder offers a plea of guilty, such plea shall be disregarded and the plea of "not guilty" shall be entered. Consequently, the plea signifies nothing with regard to the defendant's confession of guilt.

Moreover, I know of no rule, either at the common law or created by statute, which requires the judge presiding at a criminal trial to restrain the defendant's counsel from making such admission as to the guilt of his client as he may think proper; and I know of no authority possessed by this court, sitting in review, to animadvert on the discretion which the trial court, if not asked to interpose, might exercise on such an occasion. By the common law, matters resting in the discretion of a court are not subject to review on writ of error, and the only authority given by our statute for such a review is when the defendant in a criminal trial has "suffered manifest wrong or injury  *  *  *  in the denial of any matter by the court which was a matter of discretion." *Pamph. L.* 1898, *p.* 866, § 136. In this statute, denial implies request, and in the trial now under consideration nothing was requested, and hence nothing was denied.

The ninth assignment of error· complains because the judge charged the jury that there was no evidence in the case from which they had a right to infer that the defendant was not mentally responsible for her acts.

The evidence which is said to antagonize this statement of the learned justice presiding at the trial is the testimony of the defendant above quoted, and her answer to the question, "How many times did you cut her?" Answer, "A veil fell in front of my eyes and she either killed me or I killed her, but I am sure my conscience is here that I have killed her."

This is claimed to indicate an epileptic condition. There is no testimony to that effect, and we think it indicates only that degree of passion which is said to render one blind with rage.

The seventeenth assignment of error is directed against the expression by the trial justice of his opinion that, under section 106 of our Crimes act (*Pamph. L.* 1898, *p.* 794), the homicide in question, having resulted from an unlawful act against the peace of the state, the probable consequence of which was bloodshed, was necessarily murder.

Since, in our judgment, the circumstances proved and undisputed conclusively established the crime of murder, irrespective of that statute, there is now no occasion for determining whether that opinion is right or wrong.

The twenty-first assignment complains that a statement made by the defendant to the public prosecutor was admitted in evidence, although it was not shown that she knew his official character.

Such knowledge was quite unnecessary.

The remaining assignments which are sufficiently specific to warrant notice are directed to the comments and suggestions concerning the evidence made by the presiding justice in his charge to the jury.

Said Chief Justice Beasley, in *Smith* v. *State,* 12 *Vroom* 374: "That a judge has a right to give his own views to the jury with respect to the value of the testimony, or upon the merits of the case, is, and always has been, the law of this

state." See, also, *Engle* v. *State*, 21 *Id.* 272; *Foley* v. *Loughran*, 31 *Id.* 464.

There was nothing in the charge of the learned justice respecting these matters which legally comes under the supervision of this court.

On consideration of the whole case we find no error which can have prejudiced the defendant in maintaining her defence upon the merits, and therefore, according to section 136 of our Criminal Procedure act (*Pamph. L.* 1898, *p.* 866), the judgment may not be reversed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, DIXON, GARRISON, FORT, BOGERT, VOORHEES, GREEN. 8.

*For reversal*—SWAYZE, VREDENBURGH, VROOM, GRAY. 4.