# CORBITT *v.* NEW JERSEY

No. 77–5903. Argued October 3, 1978—Decided December 11, 1978

White, J., delivered the opinion of the Court, in which Burger, C. J., and Blackmun, Powell, and Rehnquist, JJ., joined. Stewart, J., filed an opinion concurring in the judgment, *post*, p. 226. Stevens, J., filed a dissenting opinion, in which Brennan and Marshall, JJ., joined, *post*, p. 228.

*James K. Smith, Jr.,* argued the cause for appellant. With him on the brief was *Stanley C. Van Ness.*

*John DeCicco,* Deputy Attorney General of New Jersey, argued the cause for appellee. With him on the brief were

214

*John J. Degnan,* Attorney General, *David S. Baime,* Assistant Attorney General, and *Anthony J. Parrillo,* Deputy Attorney General.

Mr. Justice White delivered the opinion of the Court.

Under the New Jersey homicide statutes,[1] some murders are of the first degree; the rest are of the second degree. Juries

---

[1] The relevant statutes are N. J. Stat. Ann. §§ 2A:113–1 to 2A:113–4 (West 1969 and Supp. 1978–1979):

"2A:113–1. Murder

"If any person, in committing or attempting to commit arson, burglary, kidnapping, rape, robbery, sodomy or any unlawful act against the peace of this state, of which the probable consequences may be bloodshed, kills another, or if the death of anyone ensues from the committing or attempting to commit any such crime or act; or if any person kills a judge, magistrate, sheriff, constable or other officer of justice, either civil or criminal, of this State, or a marshal or other officer of justice, either civil or criminal, of the United States, in the execution of his office or duty, or kills any of his assistants, whether specially called to his aid or not, endeavoring to preserve the peace or apprehend a criminal, knowing the authority of such assistant, or kills a private person endeavoring to suppress an affray, or to apprehend a criminal, knowing the intention with which such private person interposes, then such person so killing is guilty of murder.

"2A:113–2. Degrees of murder; designation in verdict

"Murder which is perpetrated by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing, or which is committed in perpetrating or attempting to perpetrate arson, burglary, kidnapping, rape, robbery or sodomy, or which is perpetrated in the course or for the purpose of resisting, avoiding or preventing a lawful arrest, or of effecting or assisting an escape or rescue from legal custody, or murder of a police or other law enforcement officer acting in the execution of his duty or of a person assisting any such officer so acting, is murder in the first degree. Any other kind of murder is murder in the second degree. A jury finding a person guilty of murder shall designate by their verdict whether it be murder in the first degree or in the second degree."

"2A:113–3. Murder; plea of guilty not to be received; plea of non vult or nolo contendere and sentence thereon

"In no case shall the plea of guilty be received upon any indictment for

rendering guilty murder verdicts are to designate whether the murder was a first- or second-degree crime. The mandatory punishment, to be imposed by the judge, for those convicted by a jury of first-degree murder is life imprisonment;[2] second-degree murder is punished by a term of not more than 30 years. Trials to the court in murder cases are not permitted, and guilty pleas to murder indictments are forbidden. Pleas of *non vult* or *nolo contendere,* however, are allowed. "If such plea be accepted," the punishment "shall be either imprisonment for life or the same as that imposed upon a conviction of murder in the second degree."[3] The judge

murder, and if, upon arraignment, such plea is offered, it shall be disregarded, and the plea of not guilty entered, and a jury, duly impaneled, shall try the case.

"Nothing herein contained shall prevent the accused from pleading non vult or nolo contendere to the indictment; the sentence to be imposed, if such plea be accepted, shall be either imprisonment for life or the same as that imposed upon a conviction of murder in the second degree.

"2A:113-4. Murder; punishment

"Every person convicted of murder in the first degree, [his] aiders, abettors, counselors and procurers, shall suffer death unless the jury shall by its verdict, and as a part thereof, upon and after the consideration of all the evidence, recommend life imprisonment, in which case this and no greater punishment shall be imposed.

"Every person convicted of murder in the second degree shall suffer imprisonment for not more than 30 years."

Manslaughter is separately defined in § 2A:113-5 (West 1969).

[2] The provision for the death penalty in § 2A:113-4 was invalidated in *Funicello* v. *New Jersey,* 403 U. S. 948 (1971). On remand, the New Jersey Supreme Court held the death penalty provision severable from the statute and ruled that life imprisonment was to be imposed upon all defendants convicted by a jury of first-degree murder, *State* v. *Funicello,* 60 N. J. 60, 286 A. 2d 55, cert. denied *sub nom. New Jersey* v. *Presha,* 408 U. S. 942 (1972).

[3] N. J. Stat. Ann. § 2A:113-3 (West 1969). As the statute suggests, the trial judge has complete discretion to refuse to accept the plea. See *State* v. *Sullivan,* 43 N. J. 209, 246, 203 A. 2d 117, 196 (1964). He may not, however, accept a plea if the defendant maintains his innocence,

entertaining the plea determines that there is a factual basis for conviction but need not decide whether the murder is first or second degree.

Appellant Corbitt, after pleading not guilty to a murder indictment, was convicted of committing murder in the course of an arson—a felony murder and one of the first-degree homicides.[4] He was sentenced to the mandatory punishment of life imprisonment. His conviction and sentence were affirmed by the New Jersey appellate courts. The New Jersey Supreme Court rejected his contention that because defendants pleading *non vult* could be sentenced to a lesser term, the mandatory life sentence following a first-degree murder verdict was an unconstitutional burden upon his right to a jury trial under the Sixth and Fourteenth Amendments and upon his right against compelled self-incrimination under the Fifth and Fourteenth Amendments, as well as a violation of his right to equal protection of the laws under the Fourteenth Amendment. 74 N. J. 379, 378 A. 2d 235 (1977). We noted probable jurisdiction. 434 U. S. 1060 (1978).

Appellant's principal reliance is upon *United States* v. *Jackson,* 390 U. S. 570 (1968). There, this Court held that the death sentence provided by the Federal Kidnaping Act was invalid because it could be imposed only upon the recommendation of a jury accompanying a guilty verdict, whereas the maximum penalty for those tried to the court after waiving a jury and for those pleading guilty was life

---

stands mute, or refuses to admit facts that establish guilt. *State* v. *Reali,* 26 N. J. 222, 139 A. 2d 300 (1958); *State* v. *Sands,* 138 N. J. Super. 103, 109–112, 350 A. 2d 274, 277–279 (App. Div. 1975); *State* v. *Rhein,* 117 N. J. Super. 112, 283 A. 2d 759 (App. Div. 1971).

[4] Corbitt was indicted on two counts of arson and one count of murder. The State presented its case on a felony-murder basis. He was found guilty on one count of arson and on the murder count. Sentences of life imprisonment for felony murder and a concurrent term for arson were imposed. Because the arson conviction was deemed merged into the murder conviction, the separate sentence for arson was set aside on appeal.

imprisonment. Only those insisting on a jury trial faced the possibility of a death penalty. These provisions were held to be a needless encouragement to plead guilty or to waive a jury trial, and the death penalty was consequently declared unconstitutional.

We agree with the New Jersey Supreme Court that there are substantial differences between this case and *Jackson*, and that *Jackson* does not require a reversal of Corbitt's conviction. The principal difference is that the pressures to forgo trial and to plead to the charge in this case are not what they were in *Jackson*. First, the death penalty, which is "unique in its severity and irrevocability," *Gregg* v. *Georgia*, 428 U. S. 153, 187 (1976), is not involved here. Although we need not agree with the New Jersey court that the *Jackson* rationale is limited to those cases where a plea avoids any possibility of the death penalty's being imposed, it is a material fact that under the New Jersey law the maximum penalty for murder is life imprisonment, not death. Furthermore, in *Jackson*, any risk of suffering the maximum penalty could be avoided by pleading guilty. Here, although the punishment when a jury finds a defendant guilty of first-degree murder is life imprisonment,[5] the risk of that punishment is not completely avoided by pleading *non vult* because the judge accepting the plea has the authority to impose a life term. New Jersey does not reserve the maximum punishment for murder for those who insist on a jury trial.

It is nevertheless true that while life imprisonment is the

---

[5] New Jersey Stat. Ann. § 2A:113-2 (West 1969) directs a jury finding a defendant guilty of murder to "designate by their verdict whether it be murder in the first degree or in the second degree." It thus appears that in appropriate cases the jury would be instructed on both first- and second-degree murder. In this case, however, the State proceeded on a felony-murder basis; the judge considered it to be a first-degree felony-murder case; and there were no instructions on second-degree murder or manslaughter. As far as the record before us reveals, Corbitt did not request or object to the absence of instructions on lesser crimes.

mandatory punishment for a defendant against whom a jury has returned a first-degree murder verdict, a judge accepting a *non vult* plea does not classify the murder [6] and may impose either life imprisonment or a term of up to 30 years. The defendant who wishes to avoid the certainty of life imprisonment if he is tried and found guilty by the jury of first-degree murder, may seek to do so by tendering a *non vult* plea. Although there is no assurance that he will be so favored, the judge does have the power to accept the plea and to sentence him to a lesser term.[7] It is Corbitt's submission that the possibility of a sentence of less than life upon the plea of *non vult,* combined with the absence of a similar possibility when found guilty by a jury, is an unconstitutional burden on his federal rights under the Fifth, Sixth, and Fourteenth Amendments.

As did the New Jersey Supreme Court, we disagree. The cases in this Court since *Jackson* have clearly established that not every burden on the exercise of a constitutional right, and not every pressure or encouragement to waive such a right, is invalid.[8] Specifically, there is no *per se* rule against encour-

---

[6] Under New Jersey law, the plea is to be directed to the indictment, which may charge murder generally. The trial court accepting a plea does not hold a hearing for the purpose of determining the degree of guilt or make any such determination. *State* v. *Williams,* 39 N. J. 471, 479, 189 A. 2d 193, 197 (1963); *State* v. *Walker,* 33 N. J. 580, 588–589, 166 A. 2d 567, 571–572 (1960).

[7] If the plea is accepted, the sentencing judge would appear to have discretion not only to impose up to 30 years on facts that might have warranted a first-degree murder verdict by a jury but also to impose a life term where the facts indicate a second-degree murder verdict.

[8] For example, in *Crampton* v. *Ohio,* decided with *McGautha* v. *California,* 402 U. S. 183 (1971), we upheld Ohio's procedure whereby the jury determines both guilt and punishment in a single trial and in a single verdict. Crampton argued that the unitary procedure impaired his Fifth and Fourteenth Amendment right against compelled self-incrimination because he could remain silent on the issue of guilt only at the cost of

aging guilty pleas. We have squarely held that a State may encourage a guilty plea by offering substantial benefits in return for the plea.[9] The plea may obtain for the defendant

surrendering any chance to plead his case on the issue of punishment. As we stated there, in rejecting his argument:

"The criminal process, like the rest of the legal system, is replete with situations requiring 'the making of difficult judgments' as to which course to follow. *McMann* v. *Richardson,* 397 U. S., at 769. Although a defendant may have a right, even of constitutional dimensions, to follow whichever course he chooses, the Constitution does not by that token always forbid requiring him to choose." *Id.,* at 213.

See also *Brady* v. *United States,* 397 U. S. 742, 750 (1970).

In *United States* v. *Nobles,* 422 U. S. 225 (1975), we held that a District Court could condition the admissibility of impeachment testimony by a defense witness upon production of an investigative report prepared by the witness, rejecting Nobles' contention that to do so would violate his Sixth Amendment right to compulsory process and cross-examination.

[9] The Court intimated as much in *Jackson* itself: "[T]he evil in the federal statute is not that it necessarily *coerces* guilty pleas and jury waivers but simply that it needlessly *encourages* them." 390 U. S., at 583. Decisions after *Jackson* sustained practices that, although encouraging guilty pleas, were not "needless." In the first of these cases, *Brady* v. *United States, supra,* the petitioner had pleaded guilty and was sentenced to 50 years' imprisonment after being indicted under the same statute, the Federal Kidnaping Act, at issue in *Jackson.* Brady claimed that his guilty plea had been involuntary, relying on our holding in *Jackson* that the death penalty provision of the Federal Kidnaping Act served to encourage guilty pleas needlessly. In effect, Brady argued that *Jackson* required the invalidation of every guilty plea entered under the Federal Kidnaping Act prior to *Jackson.* We concluded that he had "read far too much into the *Jackson* opinion." 397 U. S., at 746. *Jackson* had in no way altered the test of *Boykin* v. *Alabama,* 395 U. S. 238, 242 (1969), that guilty pleas are valid if knowing, voluntary, and intelligent.

Subsequent decisions reaffirmed the permissibility of plea bargaining even though "every such circumstance has a discouraging effect on the defendant's assertion of his trial rights," because the "imposition of these difficult choices [is the] inevitable attribute of any legitimate system which tolerates and encourages the negotiation of pleas." *Chaffin* v. *Stynchcombe,* 412 U. S. 17, 31 (1973). See *McMann* v. *Richardson,* 397 U. S. 759 (1970); *Parker* v. *North Carolina,* 397 U. S. 790 (1970); *North*

"the possibility or certainty . . . [not only of] a lesser penalty than the sentence that could be imposed after a trial and a verdict of guilty . . . ," *Brady* v. *United States,* 397 U. S. 742, 751 (1970), but also of a lesser penalty than that *required* to be imposed after a guilty verdict by a jury. In *Bordenkircher* v. *Hayes,* 434 U. S. 357 (1978), the defendant went to trial on an indictment charging him as a habitual criminal, for which the mandatory punishment was life imprisonment. The prosecutor, however, had been willing to accept a plea of guilty to a lesser charge carrying a shorter sentence. The defendant chose to go to trial, was convicted, and was sentenced to life. We affirmed the conviction, holding that the State, through the prosecutor, had not violated the Constitution since it "no more than openly presented the defendant with the unpleasant alternatives of forgoing trial or facing charges on which he was plainly subject to prosecution." *Id.,* at 365. Relying upon and quoting from *Chaffin* v. *Stynchcombe,* 412 U. S. 17 (1973), we also said:

> "While confronting a defendant with the risk of more severe punishment clearly may have a 'discouraging effect on the defendant's assertion of his trial rights, the imposition of these difficult choices [is] an inevitable'—and permissible—'attribute of any legitimate system which tolerates and encourages the negotiation of pleas.' *Chaffin*

*Carolina* v. *Alford,* 400 U. S. 25 (1970); *Santobello* v. *New York,* 404 U. S. 257 (1971); *Bordenkircher* v. *Hayes,* 434 U. S. 357 (1978).

In *Ludwig* v. *Massachusetts,* 427 U. S. 618 (1976), the appellant challenged the Massachusetts system for disposition of certain state crimes in which the defendant is first tried without a jury. If convicted, he may appeal and obtain a jury trial *de novo.* Although the range of penalties was the same at each tier, Ludwig suffered a harsher sentence when he appealed and was found guilty by a jury. Recognizing the interest of the State in efficient criminal procedure, we rejected a claim based on *Jackson* that the system discouraged the assertion of the right to a jury trial by imposing harsher sentences upon those that exercised that right. 427 U. S., at 627–628, n. 4.

v. *Stynchcombe, supra,* at 31. It follows that, by tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forgo his right to plead not guilty." 434 U. S., at 364.

There is no difference of constitutional significance between *Bordenkircher* and this case.[10] There, as here, the defendant went to trial on an indictment that included a count carrying a mandatory life term under the applicable state statutes. There, as here, the defendant could have sought to counter the mandatory penalty by tendering a plea. In *Bordenkircher,* as permitted by state law, the prosecutor was willing to forgo the habitual criminal count if there was a plea, in which event the mandatory sentence would have been avoided. Here, the state law empowered the judge to impose a lesser term either in connection with a plea bargain or otherwise. In both cases, the defendant gave up the possibility of leniency if he went to trial and was convicted on the count carrying the mandatory penalty. In *Bordenkircher,* the probability or certainty of leniency in return for a plea did not invalidate the mandatory penalty imposed after a jury trial. It should not do so here, where there was no assurance that a plea would be accepted if tendered and, if it had been, no assurance that a sentence less than life would be imposed. Those matters rested ultimately in the discretion of the judge,

---

[10] In *Bordenkircher,* the original indictment did not include the habitual criminal count, which was added when the defendant was reindicted following his refusal to plead. This escalation of the charges after the failure of plea bargaining, which to the dissenters in this Court demonstrated impermissible vindictiveness, is not present here; and we need not rely on this aspect of the *Bordenkircher* decision. The rationale of that case would *a fortiori* govern a case where the original indictment contains a habitual criminal count and conviction on that count follows the defendant's decision not to plead to a lesser charge.

perhaps substantially influenced by the prosecutor and the plea-bargaining process permitted by New Jersey law.[11]

*Bordenkircher,* like other cases here, unequivocally recognized the State's legitimate interest in encouraging the entry of guilty pleas and in facilitating plea bargaining, a process mutually beneficial to both the defendant and the State.[12] In pursuit of this interest, New Jersey has provided that the judge may, but need not, accept pleas of *non vult* and that he may impose life or the specified term of years. This not only provides for discretion in the trial judge but also sets the limits within which plea bargaining on punishment may take place. The New Jersey Supreme Court observed that the

[11] New Jersey expressly authorizes plea bargaining. N. J. Court Rule 3:9–3 (a). Any agreement reached is "placed on the record in open court at the time the plea is entered." Rule 3:9–3 (b). The New Jersey Rules also permit disclosure of the tentative agreement to the judge to secure advance approval. Rule 3:9–3 (c). In any event, if the judge "determines that the interest of justice would not be served by effectuating the agreement," he must permit the defendant to withdraw the plea. Rule 3:9–3 (e).

[12] The Court has several times recognized the benefits of plea bargaining to the defendant as well as to the State. In *Blackledge* v. *Allison,* 431 U. S. 63, 71 (1977), we said:

"Whatever might be the situation in an ideal world, the fact is that the guilty plea and the often concomitant plea bargain are important components of this country's criminal justice system. Properly administered, they can benefit all concerned. The defendant avoids extended pretrial incarceration and the anxieties and uncertainties of a trial; he gains a speedy disposition of his case, the chance to acknowledge his guilt, and a prompt start in realizing whatever potential there may be for rehabilitation. Judges and prosecutors conserve vital and scarce resources. The public is protected from the risks posed by those charged with criminal offenses who are at large on bail while awaiting completion of criminal proceedings." (Footnote omitted.)

See also *Santobello* v. *New York, supra,* at 260–261; *Brady* v. *United States,* 397 U. S., at 751–752. There is thus much more to be derived from plea bargaining than simply conserving scarce prosecutorial resources, and those benefits accrue equally where the plea bargaining occurs within a statutory framework.

"encouragement of guilty defendants not to contest their guilt is at the very heart of an effective plea negotiation program." 74 N. J., at 396, 378 A. 2d, at 243–244. Its conclusion was that in this light there were substantial benefits to the State in providing the opportunity for lesser punishment and that the statutory pattern could not be deemed a needless or arbitrary burden on the defendant's constitutional rights within the meaning of *United States* v. *Jackson.*

We are in essential agreement with the New Jersey Supreme Court. Had Corbitt tendered a plea and had it been accepted and a term of years less than life imposed, this would simply have recognized the fact that there had been a plea and that in sentencing it is constitutionally permissible to take that fact into account. The States and the Federal Government are free to abolish guilty pleas and plea bargaining; but absent such action, as the Constitution has been construed in our cases, it is not forbidden to extend a proper degree of leniency in return for guilty pleas. New Jersey has done no more than that.

We discern no element of retaliation or vindictiveness against Corbitt for going to trial. There is no suggestion that he was subjected to unwarranted charges. Nor does this record indicate that he was being punished for exercising a constitutional right.[13] Indeed, insofar as this record reveals, Corbitt may have tendered a plea and it was refused. There is no doubt that those homicide defendants who are willing to plead *non vult* may be treated more leniently than those who go to trial, but withholding the possibility of leniency from the latter cannot be equated with impermissible punishment as long as our cases sustaining plea bargaining remain undis-

---

[13] The dissent's suggestion, *post,* at 229–230, that New Jersey concedes that its statutes have both the purpose and effect of penalizing the assertion of the right not to plead guilty is untenable, see Brief for Appellee 28–31, and seems inconsistent with the later description of the State's position, *post,* at 230.

224

turbed. Those cases, as we have said, unequivocally recognize the constitutional propriety of extending leniency in exchange for a plea of guilty and of not extending leniency to those who have not demonstrated those attributes on which leniency is based.[14]

---

[14] The dissent appears to question any system that subjects the defendant who stands trial to a substantial risk of greater punishment than the defendant who pleads guilty. But in the next breath, the dissent appears to embrace plea bargaining, although the plea-bargaining systems operating in a majority of the jurisdictions throughout the country inherently extend to defendants who plead guilty the probability or the certainty of leniency that will not be available if they go to trial.

The dissent asserts that the attack here is on the statutory scheme rather than upon the system of plea bargaining, which is said to individualize defendants and does not mandate a different standard of punishment depending solely on whether or not a plea is entered. The distinction is without substance for the purposes of this case. In the first place, plea bargaining by state prosecutors operates by virtue of state law, here by virtue of the formal rules of the Supreme Court of New Jersey. That system permits a proper amount of leniency in return for pleas, leniency that is denied if one goes to trial. In this sense, the standard of punishment is necessarily different for those who plead and for those who go to trial. For those who plead, that fact itself is a consideration in sentencing, a consideration that is not present when one is found guilty by a jury. Second, under the New Jersey statutes, pleas may be rejected even if tendered; there must, for example, be a factual basis for the plea. Even if a plea is accepted, there is discretion to impose life imprisonment. The statute leaves much to the judge and to the prosecutor and does not mandate lesser punishment for those pleading *non vult* than is imposed on those who go to trial. It is also true that under normal circumstances, juries in New Jersey may find a defendant guilty of second-degree murder rather than first.

Third, we cannot hold that a prosecutor may charge a person with a crime carrying a mandatory punishment and secure a valid conviction, despite his power to offer leniency to those who plead—including dismissal of the mandatory count in return for a plea—and yet hold that the legislature may not openly provide for the possibility of leniency in return for a plea. This is particularly true where it is contemplated that plea bargaining will in any event go forward within the limits set by the legislature.

Finally, we are unconvinced that the New Jersey statutory pattern exerts such a powerful influence to coerce inaccurate pleas *non vult* that it should be deemed constitutionally suspect. There is no suggestion here that Corbitt was not well counseled or that he misunderstood the choices that were placed before him. Here, as in *Bordenkircher,* the State did not trespass on the defendant's rights "so long as the accused [was] free to accept or reject" the choice presented to him by the State, 434 U. S., at 363, that is, to go to trial and face the risk of life imprisonment or to seek acceptance of a *non vult* plea and the imposition of the lesser penalty authorized by law.[15]

Appellant also argues that the sentencing scheme infringes his right to equal protection under the Fourteenth Amendment because it penalizes the exercise of a "fundamental right." We rejected a similar argument in *North Carolina* v. *Pearce,* 395 U. S. 711 (1969), noting that "[t]o fit the problem . . . into an equal protection framework is a task too Procrustean to be rationally accomplished." *Id.,* at 723. All New Jersey defendants are given the same choice. Those electing to contest their guilt face a certainty of life imprisonment if convicted of first-degree murder; but they may be acquitted instead or, in a proper case, may be convicted of a lesser degree of homicide and receive a sentence of less than life. Furthermore, a plea of *non vult* may itself result in a life sentence. The result, therefore,

"may depend upon a particular combination of infinite variables peculiar to each individual trial. It simply can-

---

[15] We do not suggest that every conceivable statutory sentencing structure, plea-bargaining system, or particular plea bargain would be constitutional. We hold only that a State may make due allowance for pleas in its sentencing decisions and that New Jersey has not exceeded its powers in this respect by its statutory provision extending the possibility of leniency to those who plead *non vult* in homicide cases.

not be said that a state has invidiously 'classified' . . . ."
*Id.*, at 722.

It cannot be said that defendants found guilty by a jury are "penalized" for exercising the right to a jury trial any more than defendants who plead guilty are penalized because they give up the chance of acquittal at trial. In each instance, the defendant faces a multitude of possible outcomes and freely makes his choice. Equal protection does not free those who made a bad assessment of risks or a bad choice from the consequences of their decision. The judgment of the Supreme Court of New Jersey is affirmed.

*It is so ordered.*

MR. JUSTICE STEWART, concurring in the judgment.

I agree with the Court that *United States* v. *Jackson*, 390 U. S. 570, is not controlling in this case. In the *Jackson* case, a convicted defendant could be sentenced to death if he had requested a jury trial but could be sentenced to no more than a life sentence if he either had pleaded guilty or had pleaded not guilty and waived a jury trial. Under these circumstances, the Court held that this part of the federal statute was unconstitutional because it "impose[d] an impermissible burden upon the exercise of a constitutional right." *Id.*, at 572.

Under the New Jersey statutory scheme, by contrast, no such impermissible burden is present. Unlike the statute at issue in the *Jackson* case, the death penalty is not involved here, and a convicted defendant can be sentenced to the maximum penalty of life imprisonment whether he pleads *non vult* or goes to trial. Moreover, although in New Jersey a defendant pleads *non vult* to a general indictment of murder, he can be sentenced to the maximum sentence even though the underlying facts would have supported no more than a second-degree murder conviction if the defendant had gone to trial and been found guilty by a jury. Since the latter offense can-

not be punished by life imprisonment, a defendant who is guilty of second-degree murder is subject to a greater penalty if he pleads *non vult* than if he pleads not guilty and is convicted of that offense after a jury trial. Finally, a defendant who pleads not guilty and goes to trial can be convicted of a lesser included offense or acquitted even though in fact he is guilty of first- or second-degree murder or manslaughter. It is, therefore, impossible to state with any confidence that the New Jersey statute does in fact penalize a defendant's decision to plead not guilty.*

I cannot agree with the statement of the Court, however, that "[t]here is no difference of constitutional significance between *Bordenkircher* and this case." *Ante*, at 221. *Bordenkircher* v. *Hayes*, 434 U. S. 357, involved plea negotiations between the attorney for the prosecution and the attorney for the defense in the context of an adversary system of criminal justice. It seems to me that there is a vast difference between the settlement of litigation through negotiation between counsel for the parties, and a state statute such as is involved in the present case. While a prosecuting attorney, acting as an advocate, necessarily must be able to settle an adversary criminal lawsuit through plea bargaining with his adversary, a state legislature has a quite different function to perform. Could a state legislature provide that the penalty for every criminal offense to which a defendant pleads guilty is to be one-half the penalty to be imposed upon a defendant convicted of the same offense after a not-guilty plea? I would suppose that such legislation would be clearly unconstitutional under *United States* v. *Jackson*. Since the reasoning of part

---

*Indeed, despite the appellant's claim that the statute coerces or encourages guilty pleas, the appellant himself pleaded not guilty, went to trial and was convicted. The petitioner in *United States* v. *Jackson*, by contrast, brought a facial attack on the constitutionality of the statute by way of a motion to dismiss the indictment. See 390 U. S., at 571.

of the Court's opinion suggests otherwise, I concur only in the judgment.

MR. JUSTICE STEVENS, with whom MR. JUSTICE BRENNAN and MR. JUSTICE MARSHALL join, dissenting.

The concept of a "false" not-guilty plea has no place in our jurisprudence.[1] A defendant has a constitutional right to require the State to support its accusation with evidence.[2] He is therefore given an unqualified right—before trial when he retains the presumption of innocence—to plead not guilty.[3]

---

[1] "[T]he plea is not evidence. Nor is it testimonial. It is not under oath. Nor is it subject to cross-examination. When it is 'not guilty,' it has no effect as testimony or evidence . . . . The function of that plea is to put the Government to its proof and to preserve the right to defend. . . .

"If the plea were testimonial or evidentiary, the court would have no power to demand it. . . . But if, having used its power to extract the plea for its proper purpose, it can go further and over the defendant's objection convert or pervert it into evidence, in substance if not in form it compels the defendant to testify in his own case. That it has no power to do." *Wood* v. *United States*, 75 U. S. App. D. C. 274, 282–283, 128 F. 2d 265, 273–274 (1942) (Rutledge, J.).

See also *Sorrells* v. *United States*, 287 U. S. 435, 452 (not-guilty plea is not inconsistent with entrapment defense even though latter implies admission that the offense was committed); *State* v. *Valentina*, 71 N. J. L. 552, 556, 60 A. 177, 179 (1905) (not-guilty plea and confession of guilt are not inconsistent).

[2] Among the implications of the Fifth Amendment privilege against self-incrimination is that "[g]overnments, state and federal, [may be] constitutionally compelled to establish guilt by evidence independently and freely secured, and may not by coercion prove a charge against an accused out of his own mouth." *Malloy* v. *Hogan*, 378 U. S. 1, 7–8. As expressed by Dean Wigmore, the Fifth Amendment gives the individual the right to "requir[e] the government in its contest with the individual to shoulder the entire load." 8 J. Wigmore, Evidence § 2251, p. 317 (McNaughten rev. ed. 1961), quoted in *Murphy* v. *Waterfront Comm'n*, 378 U. S. 52, 55.

[3] "Upon that plea the accused may stand, shielded by the presumption of his innocence, until it appears that he is guilty." *Davis* v. *United States*, 160 U. S. 469, 485–486. See *Byrd* v. *United States*, 119 U. S. App. D. C.

Because the entry of such a plea cannot at once be criminally punishable and constitutionally protected, a statute that has no other purpose or effect than to penalize assertion of the right not to plead guilty is "patently unconstitutional." The Court so held in *United States* v. *Jackson,* 390 U. S. 570, 581, and that holding is dispositive of this case.[4]

Today, however, the Court decides that a defendant who has been convicted after a full trial may be punished not only for the crime charged in the indictment but additionally for entering a "false" plea of not guilty. The holding in *Jackson,* though not specifically overruled, has been divorced from the rationale on which it rested.

New Jersey does not seriously contend that § 2A:113-3 has any purpose or effect other than to penalize assertion of the right not to plead guilty. Its argument that the statute is justified by a valid state interest in conserving scarce prosecu-

---

360, 362, 342 F. 2d 939, 941 (1965); *United States* v. *Mayfield,* 59 F. 118, 119 (ED La. 1893).

Long before the incorporation of the Fifth Amendment into the Fourteenth, the States had firmly enforced these principles:

"[A] plea of not guilty, to a criminal charge, at once calls to the defense of defendant the presumption of innocence, denies the credibility of evidence for the State, and casts upon the State the burden of establishing guilt beyond a reasonable doubt. . . . These words are not mere formalities, but express vital principles of our criminal jurisprudence and criminal procedure. These principles ought not to be readily abandoned, or worn away by invasion." *State* v. *Hardy,* 189 N. C. 799, 804–805, 128 S. E. 152, 155 (1925).

[4] "Our problem is to decide whether the Constitution permits the establishment of such a death penalty, applicable only to those defendants who assert the right to contest their guilt before a jury. The inevitable effect of any such provision is, of course, to discourage assertion of the Fifth Amendment right not to plead guilty and to deter exercise of the Sixth Amendment right to demand a jury trial. If the provision had no other purpose or effect than to chill the assertion of constitutional rights by penalizing those who choose to exercise them, then it would be patently unconstitutional." *United States* v. *Jackson,* 390 U. S., at 581 (footnote omitted).

torial resources is simply a restatement of the obvious purpose of the law to motivate defendants to plead guilty instead of exercising their expensive right to trial. If appellee is correct in its assertion that the statute has been effective as a money-saving inducement to guilty pleas, that success is necessarily attributable to the deterrent effect of the penalty imposed on those who resist the inducement.

In its attempt to distinguish *Jackson,* the State argues that its statute imposes no penalty for "falsely" pleading not guilty because it provides the same maximum punishment regardless of the plea. That argument is beside the point because the statute provides a significantly more severe standard of punishment for the defendant who exercises his constitutional rights than for the one who submits without trial. For the former, a mandatory life sentence is prescribed whereas for the latter, life is "only the maximum in a discretionary spectrum of length" that extends downward anywhere from a term of 30 years to no term at all. *Dobbert* v. *Florida,* 432 U. S. 282, 300. Whether viewed in light of the legislative purpose in enacting the statute or in light of its impact on the defendant's choice of how to plead, this difference in punitive standards has the same "onerous" effect as if the maximum, as well as the minimum, penalty differed.[5] Just as in *Jackson,* the

---

[5] This conclusion was the predicate for the Court's holding in *Lindsey* v. *Washington,* 301 U. S. 397. In that case the Court held that a change in statutory sentencing provisions for burglary could not be applied retroactively even though the new provisions did not increase the 15-year maximum sentence, but only made it mandatory:

"The effect of the new statute is to make mandatory what was before only the maximum sentence. . . .

"Removal of the possibility of a sentence of less than fifteen years . . . operates to [defendants'] detriment in the sense that the standard of punishment adopted by the new statute is more onerous than that of the old." *Id.,* at 400–401.

Accord, *Dobbert* v. *Florida,* 432 U. S. 282, 300 ("[O]ne is not barred from challenging a change in the penal code on *ex post facto* grounds simply because the sentence he received under the new law was not more onerous

statute subjects the defendant who stands trial to a substantial risk of greater punishment than the defendant who pleads guilty.[6]

Nor is this statutory scheme the equivalent of a plea bargain negotiated between defense counsel and the prosecutor. While such bargains serve a state interest in common with § 2A:113–3, they do so without penalizing the defendant's assertion of his legal rights. In the bargaining process, indi-

---

than that which he might have received under the old"). See also *Lockett* v. *Ohio*, 438 U. S. 586, 619 (BLACKMUN, J., concurring in judgment) (A statutory sentencing scheme under which "a defendant can plead not guilty only by enduring a semimandatory [death-penalty provision], rather than [the] purely discretionary, capital-sentencing provision" applicable to defendants who plead guilty creates a "disparity between a defendant's prospects under the two sentencing alternatives [that] is . . . too great to survive under *Jackson*").

Mr. Justice Stone's opinion for the unanimous Court in *Lindsey* also disposes of appellee's argument that the statute here is distinguishable from the one in *Jackson* because it does not make death the consequence of a "false" not-guilty plea: When "a punishment for murder of life imprisonment or death [is] changed to death alone," it is "only a more striking instance of the detriment which ensues from the revision of a statute providing for a maximum and a minimum punishment by making the maximum compulsory." 301 U. S., at 401. In either case, "[i]t is plainly to the substantial disadvantage of petitioners to be deprived of all opportunity to receive" less than the maximum. *Id.*, at 402–403. See also *Brady* v. *United States*, 397 U. S. 742, 747–752, holding that a defendant who pleads guilty to avoid the death penalty is entitled to no different treatment from one who pleads guilty to avoid any other "maximum sentence authorized by law."

[6] In one important respect, the statute invalidated in *Jackson* was less onerous than the New Jersey statute involved in this case. The *Jackson* defendant could avoid the more severe penalty by merely forgoing his Sixth Amendment right to a jury and trying the case to the court alone. Here, however, the price of avoiding the statutory penalty for an incorrect plea of not guilty is the waiver not only of the right to a jury but also the right to put the government to its proof, to confront one's accusers, and to present a defense. See *Boykin* v. *Alabama*, 395 U. S. 238, 243.

vidual factors relevant to the particular case may be considered by the prosecutor in charging and by the trial judge in sentencing, regardless of the defendant's plea;[7] the process does not mandate a different standard of punishment depending solely on whether or not a plea is entered.[8]

Of even greater importance is the fact that a defendant who refuses a plea bargain will not be punished for his constitutionally protected recalcitrance; whatever punishment he receives will be for his conduct in committing the offense or offenses the State has proved at trial.[9] In contrast, a defendant who faces a more severe range of statutory penalties simply because he has insisted on a trial, is subjected to punishment not only for the crime the State has proved but also for the "offense" of entering a "false" not-guilty plea.

Because the legislature, the voice of the community in iden-

---

[7] See *North Carolina* v. *Pearce*, 395 U. S. 711, 723. Whenever this flexibility and individualization has given way to prosecutorial or judicial vindictiveness against those who assert their rights, the Court has condemned the practice. *Id.*, at 725. The message of *Pearce*, as well as *Jackson; Brady* v. *United States, supra; Chaffin* v. *Stynchcombe*, 412 U. S. 17; and *Bordenkircher* v. *Hayes*, 434 U. S. 357, is that where the legislature, prosecutor, judge, or all three "deliberately employ their charging and sentencing powers to induce [a] defendant to tender a plea of guilty," *Brady, supra*, at 751 n. 8, and where they do so with the "objective [of] penaliz[ing] a person's reliance on his legal rights, [such action] is 'patently unconstitutional.'" *Bordenkircher, supra*, at 363, quoting *Chaffin, supra*, at 32–33, n. 20.

[8] This point was made most forcefully in *Brady* v. *United States*. In that case, the Court upheld a conviction under the same statute challenged in *Jackson*. However, petitioner in *Brady*, unlike respondent in *Jackson*, had not received a higher sentence as "the price of a jury trial." 397 U. S., at 746. Instead, he had knowingly and voluntarily pleaded guilty and brought himself within the lower range of penalties provided for those who did not insist upon trial. The Court affirmed the conviction because the plea-bargaining process, even when buttressed by the invalid statute, was not "inherently coercive of guilty pleas." *Ibid.*

[9] See *Bordenkircher* v. *Hayes, supra*, at 364.

tifying crimes and penalties,[10] has inflexibly engraved the different standard of punishment in the statute itself, New Jersey may not disavow or disparage its policy of imposing a special punishment simply because a person has done what the law plainly allows him to do. As the Court reiterated last Term, the implementation of such a policy inevitably produces a due process violation of the most basic sort.[11]

The right of the defendant to stand absolutely mute before the bar of justice and to force the government to make its case without his aid has been accepted since the earliest days of the Republic.[12] That silence, and its formal invocation by entry of a not-guilty plea, cannot retain the protection of the Fifth Amendment and be simultaneously a punishable offense. The same act cannot be both lawful and unlawful. That is the essence of the Court's holding in *Jackson*. I respectfully dissent from its repudiation.

---

[10] See *Coker* v. *Georgia*, 433 U. S. 584, 594. Cf. *United States* v. *Hudson and Goodwin*, 7 Cranch 32.

[11] "To punish a person because he has done what the law plainly allows him to do is a due process violation of the most basic sort." *Bordenkircher* v. *Hayes, supra,* at 363.

[12] *United States* v. *Hare*, 26 F. Cas. 148 (No. 15,304) (CC Md. 1818); *United States* v. *Gibert*, 25 F. Cas. 1287 (No. 15,204) (CC Mass. 1834) (Story, J.). The days have long since passed when a refusal to plead qualified as an admission of guilt or an invitation for the extraction of a plea through torture or *piene forte et dure*. See *McPhaul* v. *United States*, 364 U. S. 372, 386–387 (Douglas, J., dissenting); *In re Smith*, 13 F. 25 (CC Mass. 1882). Today, it is universally accepted that silence at arraignment is equivalent to a plea of not guilty. See *United States* v. *Beadon*, 49 F. 2d 164 (CA2 1931), cert. denied, 284 U. S. 625.