972 F.2d 342
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
James Robert CASEY, Defendant-Appellant.
 No. 91-5462.
 United States Court of Appeals,
Fourth Circuit.
 Argued: July 6, 1992
Decided: August 24, 1992
 
 Appeal from the United States District Court for the Eastern District of Virginia, at Alexandria. Albert V. Bryan, Jr., Senior District Judge. (CR-89-429)
 ARGUED: J. Casey Forrester, Economou & Forrester, Alexandria, Virginia, for Appellant.
 Victoria Boros Major, Special Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 ON BRIEF: Ricard Cullen, United States Attorney, Michael R. Smythers, Assistant United States Attorney, Alexandria, Virginia, for Appellee.
 E.D.Va.
 Affirmed.
 Before WILKINSON, LUTTIG, and WILLIAMS, Circuit Judges.
 OPINION
 LUTTIG, Circuit Judge:
 
 
 1
 Appellant James Robert Casey challenges on three grounds his conviction and sentence for conspiracy to distribute crack cocaine. See 21 U.S.C. § 846. First, he contends that the district court erred in admitting evidence of flight and in instructing the jury that it could consider that evidence on the question of his guilt. Second, he contends that the district court predicated his sentence on an inappropriate amount of crack cocaine. Finally, he argues that there was insufficient evidence in the record to support his conviction and thus that the district court erred in denying his motion for judgment of acquittal. We discern no error by the district court, and therefore affirm.
 
 I.
 
 2
 On or about December 5, 1989, Special Agent Thomas Carter of the Federal Bureau of Investigation and Detective Rodney Davis of the Fredericksburg, Virginia Police Department visited Casey and informed him that an indictment would be forthcoming against a Fredericksburg drug organization. J.A. at 242-43. The officers told Casey that they had information linking him to the drug organization. Id. at 243. Casey replied that he was tired of being harassed and that he was thinking of leaving the area. See id. at 244, 275. The next day, without alerting his girl friend, Celestine Mercer, Casey left Fredericksburg in the car he had given her as a birthday present. Id. at 21314, 220. The grand jury indicted Casey and the other conspirators on December 21, 1989.
 
 
 3
 In January 1990, Mercer located Casey at his mother's house in Florence, Alabama. Mercer told Casey of the indictment and mailed newspaper clippings on the matter to his mother, with whom Casey was staying, so that Casey could read the articles. See id. at 214. Notwithstanding his knowledge of the indictment, Casey remained in Alabama until arrested in that state in July 1991. See id. at 2, 245. Ten of Casey's codefendants pled guilty and were sentenced on the basis of stipulated amounts of crack, between 50 and 150 grams. Casey alone elected to go to trial. A jury convicted him of conspiracy to distribute crack, and the district court sentenced him on the basis of 500 grams.
 
 II.
 
 4
 The district court found the evidence recited above sufficient to warrant a jury instruction that Casey had fled in anticipation of the forthcoming indictment. The court instructed the jury as follows:
 
 
 5
 The intentional flight of a defendant immediately after the commission of a crime or after he is accused of a crime that has been committed is not of course sufficient in itself to establish his guilt, but is a fact which if proved may be considered by the jury in light of all the other evidence in the case in determining his guilt or innocence. Whether or not evidence of flight or concealment shows a consciousness of guilt and the significance to be attached to any such evidence are matters exclusively within your province.
 
 
 6
 In your consideration of the evidence as to flight, you should consider that there may be reasons for this which are fully consistent with innocence. These may include fear of being apprehended, unwillingness to confront the police, or reluctance to appear as a witness. That may suggest also that a feeling of guilt does not necessarily reflect actual guilt.
 
 
 7
 Id. at 315-16.
 
 
 8
 Casey concedes that this was a standard flight instruction, Appellant's Br. at 12; he challenges only the district court's decision to give the instruction. In essence, Casey's argument is that the recited facts were more consistent with innocence than with guilt and that this rendered the instruction error. We disagree. "Both the decision to give (or not to give) a jury instruction and the content of an instruction are reviewed for abuse of discretion." United States v. Russell, No. 915110, slip op. at 14 (4th Cir. July 17, 1992).[1] There plainly was sufficient evidence to support the district court's instruction. The fact that the district court instructed the jury to consider whether the evidence might also be consistent with innocence further underscores that the giving of the instruction was not in error.
 
 
 9
 Casey argues that there was necessarily insufficient evidence to support the instruction because he was not actually"accused of or wanted for a crime" when he left Fredericksburg. Appellant's Br. at 15. We decline to hold that a formal or even an informal accusation is necessary for a flight instruction to be justified.
 
 
 10
 Casey contended at argument that the Government adduced no evidence of "furtiveness." We disagree. Even assuming that such evidence is required, there was ample evidence of furtiveness in the timing and manner of Casey's departure from Fredericksburg, especially when coupled with the evidence that he deliberately did not respond to the grand jury's indictment.
 
 III.
 
 11
 Casey next argues that the district court erred in ascribing to him 500 grams of crack as a participant in the conspiracy. The district court explicitly adopted paragraph 18 of the presentence report, which attributed between 1,500 and 15,000 grams to the conspiracy "[s]ubsequent to Mr. Casey's entry." J.A. at 346, 387. Evidence introduced at trial supported the attribution of this amount of crack to the conspiracy during this period. For example, two witnesses testified that Casey typically sold about two and one-quarter ounces (about 64 grams) of crack per day. Id. at 102, 133-34. A third witness bought nine ounces (about 255 grams) from Casey on a single occasion. Id. at 162-63.
 
 
 12
 This evidence notwithstanding, Casey argues that the district court should have sentenced him on the basis of the same drug quantity stipulated to in his codefendants' plea agreements. Appellant's Br. at 27. As Casey recognizes, however, "a defendant may not challenge his sentence merely because a co-defendant received a lighter sentence." Id. at 22 (citing United States v. Goff, 907 F.2d 1441 (4th Cir. 1990)). A participant in a conspiracy is responsible for, and may be sentenced upon, all of the reasonably foreseeable acts of the conspiracy. See Pinkerton v. United States, 328 U.S. 640, 646-47 (1946); United States v. Chorman, 910 F.2d 102, 110-11 (4th Cir. 1990). Here the foreseeable and actual acts entailed distribution of far in excess of the 500 grams of crack on the basis of which Casey was sentenced.
 
 
 13
 Casey also contends that the district court in effect unconstitutionally penalized him for exercising his right to a jury trial by not sentencing him on the basis of the same drug amount as that underlying his codefendants' plea bargains.[2] The Supreme Court has consistently rejected Fifth and Sixth Amendment challenges to plea agreements. See, e.g., Corbitt v. New Jersey, 439 U.S. 212, 218-26 (1978); cf. United States v. Frazier, No. 91-5865, slip op. at 7-19 (4th Cir. June 12, 1992) (discussing cases). If it is not an unconstitutional burden on such rights to force a defendant to choose between a plea and a lesser sentence on one hand, and trial with the possibility of conviction and a greater sentence on the other, then a fortiori, it is not an unconstitutional burden for a defendant who proceeds to trial to be confronted with the possibility (and ultimately the fact) that his codefendant who pleads guilty will receive a lesser sentence. Having elected to go to trial, at which evidence was introduced that supported the greater drug amount, Casey cannot now challenge his sentence on Fifth or Sixth Amendment grounds.
 
 IV.
 
 14
 Casey moved for judgment of acquittal, see Fed. R. Crim. P. 29(a), after the Government had presented its evidence. See J.A. at 251-52. He argues that the record did not include sufficient evidence to support his conspiracy conviction and thus that the district court erred in refusing to enter a judgment of acquittal. Casey rests this argument upon inconsistencies in the accounts given by Government witnesses of his role in the conspiracy. See Appellant's Br. at 31-32. Two witnesses depicted Casey as a "lieutenant" in the drug organization, who distributed crack to "runners," who, in turn, sold the drugs on the street. See J.A. at 176-77, 201-02, 221. Another witness described Casey as a "runner" rather than a "lieutenant." See id. at 126, 154-56. A fourth witness simply characterized Casey as a"major seller." See id. at 100. In light of these differences, Casey argues, "the Government's evidence was so contradictory that it could not constitute proof beyond a reasonable doubt." Appellant's Br. at 30.[3] We disagree. All of these witnesses testified that Casey received crack from, and distributed crack to, other members of the conspiracy. See, e.g., J.A. at 99-100, 126-27, 161, 201-05. Viewing the evidence in the light most favorable to the Government, as we must, see United States v. Brooks, 957 F.2d 1138, 1147 (4th Cir.), cert. denied, 60 U.S.L.W. 3879 (U.S. June 29, 1992), we cannot conclude that there was insufficient evidence to support the jury's determination that Casey was guilty of conspiracy.[4]
 
 CONCLUSION
 
 15
 For the reasons stated herein, we affirm the judgment of the district court.
 
 AFFIRMED
 
 
 [1]
 Casey also contends that under Fed. R. Evid. 403, the district court should not even have admitted the flight evidence. We cannot conclude that the court abused its discretion in finding that the prejudice to Casey from introduction of this evidence did not outweigh its probative value
 
 
 [2]
 Other than the disparity between his sentence and that of his codefendants, the only evidence that Casey offers in support of his contention is that the prosecutor-not the court-encouraged Casey's codefendants to plead guilty by stipulating to lower drug amounts. J.A. at 375-77. Such evidence establishes no intention on the part of the court to penalize Casey for proceeding to trial
 
 
 [3]
 Casey also contends that these inconsistencies "demonstrated that the Government's witnesses were not telling the truth all of the time." Appellant's Br. at 30. Any discrepancy in the testimony of these witnesses is an issue of credibility for the jury, not the court, to resolve
 
 
 [4]
 At argument, this court requested from the Government a written explanation of the events surrounding the prosecution of Casey's codefendants. The Government submitted a memorandum on July 10, and Casey submitted a response on July 27. The court has reviewed both documents and is satisfied that the prosecutor did not purposely withhold information from the sentencing court