UNITED STATES of America,
Plaintiff-Appellee,

v.

William K. PORTER,
Defendant-Appellant.

No. 79–30153.

United States District Court,
M. D. Tennessee,
Nashville Division.

April 29, 1981.

Mary Reed, Sp. Asst. U. S. Atty. and William Cohen, Asst. U. S. Atty., Nashville, Tenn., for plaintiff-appellee.

Robert Tucker, Asst. Federal Public Defender, Nashville, Tenn., for defendant-appellant.

## MEMORANDUM

WISEMAN, District Judge.

This is an appeal from a Magistrate's judgment assessing a $150 fine against defendant for violating 36 C.F.R. § 327.11(b) (1979), which prohibits pet owners from bringing unleashed animals into developed recreation areas. The case requires the Court to decide whether the Collateral Forfeiture Rule adopted in this district for the disposition of certain minor offenses operates unconstitutionally. The Court holds that it does. As a consequence, the $150 fine imposed by the Magistrate will be reduced to $30.

### Operation of the Collateral Forfeiture Rule

The Magistrate found defendant guilty of violating 36 C.F.R. § 327.11(b), which provides in relevant part: "No person shall bring dogs, cats, or other pets into devel-

oped recreation areas unless penned, caged, or on a leash under 6 feet in length, or otherwise under physical restraint at all times." More specifically, the Magistrate found that defendant had brought an unleashed Doberman Pinscher into Center Hill Park. 36 C.F.R. § 327.27 subjects the violator of section 327.11(b) to a potential fine of $500 and/or incarceration up to six months. As such, a violation of section 327.11(b) is a "minor offense" as defined by 18 U.S.C. § 3401(f), and thus governed by the Rules of Procedure for the Trial of Minor Offenses Before United States Magistrates [Magistrates' Rules]. *See* Magistrates' Rule 1. Such a violation is more narrowly classified as a "petty offense" as defined by 18 U.S.C. § 1(3). Rule 9 of the Magistrates' Rules provides:

When authorized by local rules of the district courts in cases of petty offenses as defined in Title 18, U.S.C. § 1(3), payment of a fixed sum may be accepted in lieu of appearance and as authorizing the termination of the procedure.

Pursuant to the authorization conferred by this Rule, this Court, by Order dated April 13, 1972, amended the Local Rules of Court and adopted a "Collateral Forfeiture Rule." (Current version at Chapter One, Rule 4 of the Local Rules Governing Duties and Responsibilities of Magistrates.) This Order listed numerous petty offenses for which "collateral may be posted in lieu of the appearance of the offender in the amount indicated for this offense." Forfeiture of the collateral "shall be tantamount to a finding of guilty." Section 2 of the Order specifically provides, however, that a plea of not guilty requires a "Mandatory Appearance" before a United States Magistrate. By persisting in his plea of not guilty and demanding a trial, a defendant subjects himself to a potential fine of $500 and up to six months' incarceration, as provided by 36 C.F.R. § 327.27.

Section 1G of the April 13, 1972, Order provides that an individual cited for a violation of 36 C.F.R. § 311.20, which regulated the "control of horses, cats, dogs, and other pets," could, in lieu of a personal appearance before the Magistrate, forfeit $15 collateral. On March 23, 1973, the Code of Federal Regulations was amended, and sections 311.20 and 326.20 (the penalty provision accompanying section 311.20) became sections 327.11 and 327.27. An April 16, 1973, Order of this Court amended the Local Collateral Forfeiture Rule to reflect this change, but the $15 forfeiture provision for the described offense remained the same.

Defendant was cited for his offense on May 28, 1979. In accordance with the provisions of the Local Collateral Forfeiture Rule, the Violation Notice informed defendant that he could mail in $15, which would signify that he did not contest the charge. Defendant did not remit the $15 fine, however, thereby necessitating a trial. After experiencing some difficulty in obtaining defendant's appearance, the Magistrate conducted a trial on August 30, 1979. Having found defendant guilty, the Magistrate fined him $150.

## Discussion

Defendant argues that the Magistrate could not constitutionally impose a penalty greater than that provided by the Collateral Forfeiture Rule ($15). He maintains that the imposition of a greater penalty than that provided by the Collateral Forfeiture Rule chills the exercise of the fifth amendment privilege against self-incrimination and, additionally, violates the due process clause of that amendment.

The issue before the Court is whether the operation of the Collateral Forfeiture Rule, as described above, impermissibly burdens the exercise of constitutional rights that attach to criminal proceedings, particularly the right not to incriminate one's self. The government argues that no constitutional rights attach to petty offense proceedings at all. This argument follows "a fortiori" according to the government, from those cases holding that there is no sixth amendment right to trial by jury in petty offense proceedings. *See Frank v. United States*, 395 U.S. 147, 148, 89 S.Ct. 1503, 1504, 23 L.Ed.2d 162 (1969); *Schick v. United States*,

195 U.S. 65, 68–70, 24 S.Ct. 826, 827, 49 L.Ed. 99 (1904); *United States v. Stewart,* 568 F.2d 501 (6th Cir. 1978).

■ The Court is shocked by the government's argument that petty offenders have no constitutional rights. The suggestion that a Magistrate can impose a six month jail term and a $500 fine without any semblance of constitutional due process is wholly untenable. Absence of a right to jury trial for petty offenses does not mean that no other constitutional rights attach in such cases. *Compare In re Gault,* 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) *with McKeiver v. Pennsylvania,* 403 U.S. 528, 91 S.Ct. 1976, 29 L.Ed.2d 647 (1971). *McKeiver* held that there is no right to a jury trial in juvenile delinquency proceedings, but it did not detract from *Gault*'s holding that the right to counsel, the right of confrontation, and the privilege against self-incrimination apply to delinquency proceedings. As Justice Fortas wrote for the Court in *Gault,* "our Constitution guarantees that no person shall be 'compelled' to be a witness against himself when he is threatened with deprivation of his liberty—a command which this Court has broadly applied and generously implemented in accordance with the teaching of the history of the privilege and its great office in mankind's battle for freedom." 387 U.S. at 50, 87 S.Ct. at 1455. Although disturbed by the necessity of even having to address the point, this Court holds that defendants charged with petty offenses enjoy basic constitutional protections, including the right not to incriminate themselves.

■ Having determined that constitutional rights apply to petty offense proceedings, the Court must now decide whether the operation of the Collateral Forfeiture Rule unconstitutionally penalizes their exercise. The Court starts with the constitutional principle that guilty pleas may not be "needlessly encourage[d]" so as to create an "impermissible burden upon the assertion of a constitutional right." *United States v. Jackson,* 390 U.S. 570, 583, 88 S.Ct. 1209, 1217, 20 L.Ed.2d 138 (1968). *Jackson* presented far more dramatic facts than does this case; the kidnapping statute at issue in *Jackson* provided for the death penalty if but only if a jury imposed it, and consequently defendants were strongly "encouraged" to plead guilty rather than face the possibility of death if they insisted on a trial.[1] The Supreme Court struck down the death penalty provision, holding that it needlessly penalized the assertion of a constitutional right. 390 U.S. at 583, 88 S.Ct. at 1217. *Jackson* dealt with facts far more compelling than those presented by this case, a point that the government has emphasized in attempting to distinguish away *Jackson.* The Court recognizes that *Jackson* is hardly "on all fours" with the instant case, but the constitutional principle announced in *Jackson* cannot be ignored: the imposition of penalties that needlessly penalize the assertion of constitutional rights is unconstitutional. There is no principled basis for suspending this rule in petty offense cases, no matter how mundane.

Although *Jackson* teaches that penalty schemes may not "needlessly encourage" guilty pleas, the Supreme Court has also recognized that offering "substantial benefits" in return for a guilty plea is constitutionally acceptable. *Corbitt v. New Jersey,* 439 U.S. 212, 218–19, 99 S.Ct. 492, 497, 58 L.Ed.2d 466 (1978). The government is not constitutionally forbidden to extend a "proper" degree of leniency in return for guilty pleas. *Id.* at 223, 99 S.Ct. at 500. The Collateral Forfeiture Rule undeniably offers a "substantial benefit in return for a guilty plea." For the payment of a relatively small fine,[2] a defendant avoids the burden of appearing for trial, the possibility of incarceration, and the possibility of a fine that could reach $500. For example, in the instant case defendant Porter could have avoided his $150 fine by sending in $15.

---

1. Requesting a bench trial was not an effective escape, because the government could insist on a jury trial. *See Singer v. United States,* 380 U.S. 24, 85 S.Ct. 783, 13 L.Ed.2d 630 (1965).

2. The maximum fine for any of the offenses listed on the collateral forfeiture schedule is $100.

The Collateral Forfeiture Rule creates a structural disparity. Defendants who plead guilty pay a relatively modest sum certain, while defendants who exercise their right to plead not guilty face indefinite penalties limited only by $500 and six month maximums for fines and terms of imprisonment, respectively. The constitutional issue presented by this appeal is whether this institutionalized disparity impermissibly burdens the assertion of constitutional rights by needlessly encouraging guilty pleas. *See Jackson v. United States, supra.* The offer of substantial benefits in return for guilty pleas is constitutional, but the question is whether the Collateral Forfeiture Rule is so substantial a benefit, vis-a-vis the maximum penalties faced at trial, that the disparity impermissibly penalizes the assertion of a constitutional right.

As framed, the issue requires the Court to establish a criterion for separating permissible offers of substantial benefits from impermissible encouragements to plead guilty. *Compare Jackson v. United States, supra, with Corbitt v. New Jersey, supra.* The Supreme Court has provided little guidance, but the Court has suggested a guiding principle to follow when examining the constitutional validity of a penalty scheme. A statutory pattern may not exert "such a powerful influence to coerce inaccurate pleas" that the pleas are suspect. *See Corbitt v. New Jersey, supra,* 439 U.S. at 225, 99 S.Ct. at 500. If a penalty scheme creates an unchecked danger of inaccurate pleas, that system impermissibly burdens the exercise of a constitutional right. *See McCoy & Mirra, Plea Bargaining as Due Process in Determining Guilt,* 32 Stan.L.Rev. 887, 899, 922, 926–27 (1980). That danger is virtually nonexistent when the offense is anything *but* a petty offense, however, because the protections of Rule 11, F.R.Crim.P., apply to all proceedings in more serious cases. *See* Rules 1, 54(b)(4), F.R.Crim.P.; Magistrates' Rule 1. A Magistrate or district judge taking a plea to a nonpetty offense must en-

sure that the plea is voluntary, and he must also determine that the plea has a factual basis. Rule 11(d), (f), F.R.Crim.P. Of equal significance is the statutory right to counsel enjoyed by every defendant charged with a federal felony or nonpetty misdemeanor. *See* 18 U.S.C. § 3006A(a).[3]

The critical importance of representation by counsel is sharply illustrated by *Brady v. United States,* 397 U.S. 742, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), which held that the defendant's guilty plea to a federal kidnapping charge was voluntary, even though induced by fear of the death penalty provision that the Court later struck down in *United States v. Jackson, supra.* (Brady's plea was entered prior to *Jackson.*) The Court repeatedly emphasized Brady's representation by competent counsel in reaching its conclusion that his plea had been voluntary, despite its possible motivation by a desire to escape a death penalty provision that was later found unconstitutional. *See* 397 U.S. at 754, 756, 758, 90 S.Ct. at 1472, 1473, 1474. The presence of counsel assured the Court that defendants in Brady's circumstances were not likely to "falsely condemn themselves." *Id.* at 758, 90 S.Ct. at 1474. *Bordenkircher v. Hayes,* 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604 (1978), likewise emphasized the presence of competent counsel in holding that a prosecutor did not violate the defendant's constitutional rights by threatening him with an habitual criminal prosecution unless he pleaded to the offense charged. *See* 434 U.S. at 363, 98 S.Ct. 667. Once again, the Court expressed its confidence that the presence of counsel would prevent "false self-condemnation." *Id.*

The situation of a person charged with a petty offense on the collateral forfeiture schedule is almost incomparable with the dire circumstances faced by the defendants in *Brady* and *Bordenkircher.* There is, however, one unfavorable comparison that bears directly on the instant case. The

---

**3.** The Court has referred to the statutory right to counsel because the federal statutory right is broader than the Sixth Amendment right. The federal statute provides the right to counsel for all nonpetty offenses, even when there is no risk of incarceration. *Compare* 18 U.S.C. § 3006A(a) *with Scott v. Illinois,* 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979).

guilty plea in *Brady* bore assurances of its reliability, and the same would have been true if the defendant in *Bordenkircher* had pleaded. Both defendants were represented by counsel, and any plea entered had to pass judicial scrutiny. But in the case of a defendant charged with an offense on the collateral forfeiture schedule, the huge disparity between the penalty faced at trial and the forfeiture amount nullifies any assurance that a person who chooses to mail in the forfeiture is actually guilty. *See* McCoy & Mirra, *supra*, 32 Stan.L.Rev. at 926–27. Needless to say, a plea to a petty offense requires far less assurance of accuracy than a felony, but the Constitution does not allow criminal proceedings that produce guilty pleas with no indicia of reliability whatsoever. *See Corbitt v. New Jersey, supra*, 439 U.S. at 225, 99 S.Ct. at 500; McCoy & Mirra, *supra*, 32 Stan.L.Rev. at 899, 922.

Unfortunately, the collateral forfeiture system in this District suffers from that unconstitutional defect. As the Court observed in *North Carolina v. Pearce*, 395 U.S. 711, 724, 89 S.Ct. 2072, 2080, 23 L.Ed.2d 656 (1969), "[i]t is unfair to use the great power given to the court to determine sentence to place a defendant in the dilemma of making an unfree choice." The Collateral Forfeiture Rule violates that principle, however, because the disparity between the forfeiture amount and the possible penalty faced at trial is so extreme that a defendant who chooses to contest his guilt could almost be called a fool. Reasonable people do not generally pass up the opportunity to mail in $15 when a trial carries the possibility of a fine up to $500, and even incarceration. As a result, there is absolutely no assurance that a person who mails in the forfeiture is actually guilty of the offense charged. The citation itself is of no legal significance, because the presumption of innocence cloaks even those citizens charged with petty offenses.

The hearty (or foolish) souls who venture to trial face substantial penalties on the exercise of that right, since they face penalties so disparate that most reasonable people would have pleaded guilty, without regard to actual guilt. Defendant Porter was so penalized; given the choice, few dog owners would worry about their actual guilt if they could avoid a $150 fine by sending in $15. This is not to suggest that constitutional rights are violated every time a defendant receives a stiff sentence after a lenient offer. It is the systematic coercion of unreliable pleas that makes the burden on the exercise of the right unconstitutional in this case. The burden is not itself unconstitutional; it is, however, the fruit of an unconstitutional system, and therefore impermissible.

Having determined that Porter's exercise of his constitutional rights was impermissibly burdened, the Court must now consider the remedy. The $150 fine should be reduced to an amount consistent with the principle that penalty structures should not unnecessarily encourage guilty pleas. The Court finds, somewhat arbitrarily, that doubling the amounts listed in the collateral forfeiture schedule if a defendant goes to trial would not coerce inaccurate pleas. On the other hand, the possibility of a doubled fine after trial allows the Collateral Forfeiture Rule to operate as the permissible offer of a substantial benefit in return for a guilty plea. A defendant's choice to mail in the forfeiture when faced with the possibility of being fined double that amount after a trial would presumably be the product of a reasoned decision that he is actually guilty, and that there would be no benefit in going to trial. This offers a very low level of assurance that a guilty plea is reliable, but it is a sufficient guarantee of reliability in this context.

Accordingly, the Magistrate's judgment shall be modified. The Court reduces the $150 fine imposed by the Magistrate to $30.