**Malcolm HOWARD, Appellant (Defendant below),**

v.

**STATE of Indiana, Appellee (Plaintiff below).**

**No. 1282S481.**

Supreme Court of Indiana.

Feb. 8, 1984.

Walter E. Bravard, Jr., Indianapolis, for appellant.

Linley E. Pearson, Atty. Gen., Richard Albert Alford, Deputy Atty. Gen., Indianapolis, for appellee.

HUNTER, Justice.

The defendant, Malcolm Howard, was convicted by a jury of two counts of robbery, Class B felonies, Ind.Code § 35–42–5–1 (Burns 1979 Repl.), but was found not guilty of two counts of kidnapping. He was sentenced to the Indiana Department of Correction for concurrent terms of twelve years on each count. Defendant raises the following three issues in this direct appeal:

1. Whether there was sufficient evidence to sustain the verdict of the jury on the two robbery counts;

2. Whether the court erred by permitting the jury to view defendant dressed in orange coveralls he had worn from the jail; and

3. Whether the trial court stated sufficient reasons for giving defendant an enhanced sentence.

A brief summary of the facts from the record most favorable to the state shows that on December 22, 1981, at about 8:30 p.m., Virginia McDonald and her daughter, Leslie Whitted, walked to their car in a shopping center parking lot. Whitted got into the driver's side of the car and McDonald got into the passenger side. As they were getting into the car, a young black man forced his way into the back seat. Both women started to scream and hit at the man, but he pulled out a knife and held it at McDonald's back. The man ordered Whitted to drive around and flipped up the rearview mirror so she couldn't see him in the back seat. Whitted protested that she couldn't drive without the mirror and the man allowed her to put the mirror back down to its normal position.

As Whitted drove around, the man demanded that both women give him their purses and their jewelry. Eventually, the man told Whitted to stop the car and ordered both women to get out of the car without turning around. The man then drove off with the car, the purses, jewelry, groceries and other packages that were in the car. The women immediately notified the police and the stolen car was recovered about two weeks later in front of defendant's residence. A latent fingerprint on the steering column matched defendant's fingerprint. McDonald was not able to identify defendant at a lineup or from photographs; however, she explained that she has to wear eyeglasses to drive and that her eyes are developing cataracts. Whitted was able to identify defendant from a photographic array and at a lineup. One of defendant's friends testified that about two weeks after the incident, defendant told him he had stolen McDonald's car at the shopping center by jumping in the car with a knife.

I.

Defendant first contends that there was not sufficient evidence of his identity as the robber to sustain the convictions. He argues that the night was dark and neither woman got a good look at him since he remained in the back seat until they got out of the car. It is axiomatic that as a court of review we will neither judge the credibility of witnesses nor reweigh the evidence. Rather, we will look only to that evidence most favorable to the state and all reasonable inferences to be drawn therefrom. If there is substantial evidence of probative value to support the conclusion of the trier of fact, the verdict will not be overturned. *Muse v. State,* (1981) Ind., 419 N.E.2d 1302; *Wofford v. State,* (1979) 271 Ind. 518, 394 N.E.2d 100; *Poindexter v. State,* (1978) 268 Ind. 167, 374 N.E.2d 509.

In this case, one of the victims unequivocally identified defendant as the person who had jumped in the car and robbed her and her mother. She explained that she was able to see and observe the robber as he got into the car when the interior lights were on. She also stated that she had observed him in the rearview mirror of the car while she drove and that he had a cap pulled over his hair but not over his face. Both victims were shown a large number of photographs on the night of the crime and picked out a photograph of a

person who was not defendant, but resembled him. At a later time, Whitted was shown a smaller photographic array and selected the same picture she had selected earlier, along with a photograph of defendant. On the evening prior to trial, a lineup was held and Whitted selected the defendant from that lineup as the person who had robbed her and her mother. She acknowledged that her identification of defendant in court was based upon a combination of her observations of him during the robbery and of the pictures she had seen.

The jury was fully informed about the discrepancies in the identification testimony and the opportunities the victims had to observe the robber. They were able to judge the demeanor of the witnesses. Whitted's identification of defendant as being the robber was corroborated to some extent by the testimony of defendant's friend and other circumstantial evidence. In light of the standard of review incumbent upon us, defendant's arguments that Whitted's identification was not credible, must fail. There was sufficient evidence of identification to sustain the verdict of the jury. *Gatewood v. State,* (1982) Ind., 430 N.E.2d 781; *Munsey v. State,* (1981) Ind., 421 N.E.2d 1115; *McCawley v. State,* (1980) Ind., 409 N.E.2d 594.

 Defendant also contends that there was not sufficient evidence to show that two distinct robberies occurred. We have clearly decided this issue contrary to defendant's position. Where a robber takes property from two individuals and the property taken was owned by the person from whom it was taken and was in the owner's possession, two separate robberies have occurred even though they are part of the same transaction or series of events. *Richardson v. State,* (1981) Ind., 429 N.E.2d 229; *Young v. State,* (1980) Ind., 409 N.E.2d 579; *Ferguson v. State,* (1980) Ind., 405 N.E.2d 902. In this case, the record shows that defendant took purses and jewelry from each of the two women and that is sufficient to sustain the verdicts on two counts of robbery.

## II.

Defendant next contends that he was denied his right to a fair trial because he was required to appear in orange coveralls which were the jail uniform of the Marion County jail. The record shows that he was identified by various witnesses during the trial as the man who was wearing an orange uniform or coveralls. However, the record also shows that defendant did not object at any time before or during the trial to the manner in which he was dressed or viewed by the jury.

 It is clearly settled that the failure to object to being tried in prison clothes, for whatever reason, is sufficient to waive the right to be tried in civilian clothes, since the central issue for constitutional purposes is whether the accused was *compelled* to appear before the jury in the prison clothes. *Estelle v. Williams,* (1976) 425 U.S. 501, 96 S.Ct. 1691, 48 L.Ed.2d 126; *Gregory v. State,* (1980) Ind., 412 N.E.2d 744; *Bledsoe v. State,* (1980) Ind., 410 N.E.2d 1310; *Williams v. State,* (1983) Ind. App., 451 N.E.2d 687. There is no evidence here that defendant was compelled to wear prison clothes in the presence of the jury, so there is no error here.

## III.

Defendant finally contends that the trial court did not state sufficient reasons for increasing the presumptive ten-year sentence by two years. It is true that the trial court did not list any aggravating circumstances in the sentencing order; however, we have the complete record of the sentencing hearing before us which shows the aggravating factors the court did consider.

It is true that this Court has continually held that when a trial court uses its discretionary power to increase or decrease the basic sentence or impose consecutive terms of imprisonment, the record must disclose what factors were considered by the judge to be mitigating or aggravating circumstances. The record must further show that the determination of the sentence was based upon a consideration of the facts of

the specific crime and the relation of the sentence imposed to the objectives which will be served by that sentence. *Garringer v. State*, (1983) Ind., 455 N.E.2d 335; *Washington v. State*, (1981) Ind., 422 N.E.2d 1218; *Abercrombie v. State*, (1981) Ind., 417 N.E.2d 316; *Gardner v. State*, (1979) 270 Ind. 627, 388 N.E.2d 513.

█ In this case, the court considered the presentence report and discussed this report with defendant at the sentencing hearing. Defense counsel pointed out that the report erroneously stated that defendant was out on bond for another offense when the instant crime occurred. However, the report correctly stated that defendant, who was only twenty-four years old, had a prior criminal record of both juvenile and adult offenses. The trial court stated that he was giving the enhanced sentence of twelve years because of defendant's lengthy criminal history and the fact that there appeared to be a need for correctional treatment for defendant. He also stated that he felt defendant was lucky to have received the jury verdict on the Class B robberies as he felt that the evidence would have supported verdicts of guilty on Class A robberies.

While this statement of reasons for imposing the enhanced sentence is not as complete as it might have been, it does show that the court had considered the nature and character of the defendant and the facts of the specific crime. Defendant's prior criminal history and need for correctional treatment were proper factors for the court to consider. Ind.Code § 35–38–1–7 (Burns 1983 Supp.). The sentence of twelve years was clearly within the limits of the trial court's discretion, and the court gave sufficient aggravating circumstances to support the imposition of the enhanced sentence. There was no error here.

For all of the foregoing reasons, there was no trial court error and the judgment of the trial court should be affirmed.

Judgment affirmed.

GIVAN, C.J., and DeBRULER, PRENTICE and PIVARNIK, JJ., concur.