**Henry Lee TOTTEN, Appellant (Defendant Below),**

v.

**STATE of Indiana, Appellee (Plaintiff Below).**

No. 584S171.

Supreme Court of Indiana.

Dec. 19, 1985.

John F. Surbeck, Jr., Deputy Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Phillip B. Rarick, Deputy Atty. Gen., Indianapolis, for appellee.

PRENTICE, Justice.

Defendant (appellant) appeals his conviction by a jury of attempted rape, a class B felony, Ind.Code § 35–41–5–1 and Ind.Code § 35–42–4–1 (Burns Code Ed.1979). He was sentenced to twelve (12) years imprisonment.

Defendant presents two issues for our review:

1. Whether the evidence is sufficient to support his conviction. Specifically, he argues the evidence is insufficient to prove that he used force in attempting to have sexual intercourse with the victim.

2. Whether the trial court's findings are inadequate to support enhancement of the presumptive sentence from ten (10) years to twelve (12) years.

We affirm.

### ISSUE I

Our standard of review for sufficiency of evidence is familiar:

"Upon a review for sufficient evidence, this Court will look only to the evidence most favorable to the State and all reasonable inferences to be drawn therefrom. If the existance of each element of the crime charged may be found therefrom, beyond a reasonable doubt, the verdict will not be disturbed. In such a review, we will not weigh conflicting evidence nor will we judge the credibility of witnesses." (Citations omitted.)

*Loyd v. State* (1980), 272 Ind. 404, 407, 398 N.E.2d 1260, 1264, *cert. denied,* 449 U.S. 881, 101 S.Ct. 231, 66 L.Ed.2d 105.

The evidence favorable to the State reveals the following facts.

On December 29, 1982, the victim lived in a two-story apartment building in Fort Wayne, Indiana. She was twenty years old and approximately four months pregnant. Her apartment was upstairs and she lived with her one year old baby. A female friend of the victim's lived in a downstairs apartment directly below the victim's apartment. Their apartments were accessible by a common outside entrance and individual interior entrances. The outside door locked automatically when it was closed.

Because her telephone was out of order, the victim went to a neighbor's to make a telephone call on the afternoon of December 29, 1982. She had lost her key to the outside door and in order to be able to re-enter, she left the outside door propped open. When the victim returned, the outside door was closed and locked. Customarily, when the victim locked herself out of the building, she would ring the doorbell and her friend would open the door.

Defendant was also acquainted with the victim's friend and on this occasion, he responded to the doorbell and went to a window adjacent to the door. Defendant, however, refused to open the door. The victim explained that her baby was alone sleeping in her apartment, but Defendant again refused to open the door and he began to call the victim names. At this point, the victim told Defendant that she was going to call the police and she left to make the call. When she returned, Defendant continued to refuse to open the door. After approximately fifteen to twenty minutes, the police had not arrived and the victim left the building to make a second request for assistance. Upon her return from making this call, the victim found the outside door standing open. She entered the building and went upstairs toward her apartment. When she reached the hallway landing by her apartment, she encountered Defendant, who was holding a butcher knife.

Defendant began to question the victim about why she had left the building to use the telephone and why she had called the police. The victim explained that her telephone was broken and that she was concerned about her baby. Defendant was belligerent and called the victim a "bitch" several times. At one point, Defendant said, "Bitch, don't you know I will kill you, the monkeys downtown are giving me forty years and if I kill you, it won't make any difference."

Children from the downstairs apartment, with whom Defendant was allegedly baby-sitting, started up the stairs and he told them to go back downstairs. Then Defendant told the victim to open her apartment door and she refused to do so. Defendant said, "You think I'm playing with you [sic] I will kill you." The victim opened her apartment door. While Defendant was speaking to the victim, he was holding the knife by her face.

Once inside the apartment, Defendant, told the victim to go to her room and undress. He followed her and removed his clothes. Defendant ordered the victim to kiss him and ordered her to perform fellatio. After she complied, he started to have intercourse with her, but he stopped when they heard a knock at the door. When the victim answered the door, she discovered it was the police. She requested assistance and told the officers that Defendant had tried to rape her. Defendant entered the room nude and began to give a contradictory explanation.

At trial, the victim made several statements that she was afraid Defendant would harm her.

Defendant contends the evidence is insufficient to prove that he attempted to have intercourse with the victim by using or threatening to use force. The use of force or the threat of force is an element of attempted rape as a class B felony, Ind. Code § 35–42–4–2 (Burns Code Ed.1979 Repl.). Although Defendant was originally charged with attempted rape as a class A felony, he was convicted of the lesser offense. Attempted rape as a class A felony includes the element that the Defendant committed the offense by threatening the use of deadly force or while armed with a deadly weapon. Ind.Code § 35–42–4–1.

Because the jury failed to find him guilty of a class A felony, Defendant conjectures that the jury disbelieved the victim's testimony about the knife. Defendant contends that if the jury disbelieved her testimony about the knife, there was no other evidence that he used force. He is asserting that if he was not guilty of attempted rape, as a class A felony, he was not guilty of any offense in light of the evidence.

■ Defendant's argument is analogous to the standard used to determine whether an instruction on a lesser included offense is required. *E.g., Jones v. State* (1982), Ind. 438 N.E.2d 972. However, this analysis is not applicable to a sufficiency question. A jury's verdict may be inconsistent or even illogical, but nevertheless be permissible if it is supported by sufficient evidence. *James v. State* (1985), Ind., 472 N.E.2d 195; *Marsh v. State* (1979), 271 Ind. 454, 393 N.E.2d 757. Although the jury could have found Defendant guilty of class A attempted rape, it was not required to do so. *James v. State, supra.* Furthermore, we will not speculate about the jury's thought processes or motivation. *Marsh v. State, supra.*

■ Apart from his inconsistency argument, Defendant is simply asking us to reweigh the evidence and to rejudge the credibility of witnesses. He wants us to accept his story that he had a relationship with the victim and consensual sexual relations. We will not reweigh the evidence or rejudge the witnesses credibility. *Loyd, supra.* Given this framework, the evidence is clearly sufficient to support the jury's verdict.

### ISSUE II

Defendant alleges that the trial court's findings are inadequate to support enhancement of the presumptive sentence by two (2) years, pursuant to Ind.Code § 35–4.1–4–3 and Ind.Code § 35–4.1–4–7(c) [Burns Code Ed.1979 Repl. (now Ind.Code 35–38–1–3 and 7(b) ]. The trial court made the following statement to support enhancement of the presumptive sentence:

"The (2) years are added to the sentence because of the defendant's prior involvement in similar activities and because of his attitude in Court."

Defendant argues that the trial court merely and erroneously repeated statutory language in referring to his prior criminal history. He also argues his attitude in court is not properly an aggravating factor pursuant to Ind.Code § 35–4.1–4–7(c).

■ We agree that a trial court is required to make a statement of facts which are particular to the defendant and the crime involved when exercising its discretion to enhance a basic sentence. *Page v. State* (1981), Ind. 424 N.E.2d 1021, 1023. In order for us to review the trial court's exercise of its sentencing discretion, we must be made aware of its reasons for imposing a sentence. The trial court should not simply repeat statutory language. *Id.*

■ The statutory factor pertaining to a defendant's criminal activity reads:

"The person has a history of criminal activity."

Ind.Code § 35–4.1–4–7(c)(2).

The trial court found that the Defendant had been involved in *similar* prior criminal activities, an important departure from mere repetition of the statute. Granted, the trial court could have specifically listed these prior offenses, but its failure to do so does not thwart our review, because his pre-sentence report was introduced at the sentencing hearing. It discloses that Defendant, as a juvenile, was charged with attempted rape, assault and battery, and molesting. This record supports the trial court's finding. *Howard v. State* (1984), Ind., 459 N.E.2d 29. We also note that these offenses do not comprise Defendant's entire prior criminal history. He has a prior federal conviction for heroin distribution and an armed robbery charge that was dropped because he was serving a federal sentence for the heroin conviction.

■ Defendant argues that his attitude in court can be a mitigating factor pursuant to Ind.Code § 35–4.1–4–7(b)(8), but can-

not be an aggravating factor. Ind.Code § 35–4.1–4–7(d) reads:

"The criteria listed in subsections (b) and (c) of this section do not limit the matters that the court may consider in determining the sentence."

The factors enumerated in subsection (c) are not the only factors that a trial court may consider in determining sentencing. *Kelley v. State* (1983), Ind., 452 N.E.2d 907, 912.

The judgment is affirmed.

GIVAN, C.J., and PIVARNIK and SHEPARD, JJ., concur.

DeBRULER, J., concurs in affirmance of conviction but votes to remand to trial court for more specific sentencing statement.