Michael D. HILL, Appellant (Defendant Below),

v.

STATE of Indiana, Appellee (Plaintiff Below).

No. 1084S399.

Supreme Court of Indiana.

Nov. 17, 1986.

Jack E. Roebel, Allen County Deputy Public Defender, Fort Wayne, for appellant.

Linley E. Pearson, Atty. Gen., Michael B. Murphy, Deputy Atty. Gen., Indianapolis, for appellee.

DICKSON, Justice.

Defendant Michael Hill appeals from the sentence imposed following his conviction of burglary, a class A felony.[1] He was sentenced to (50) years imprisonment, the maximum term for a class A felony.[2] This direct appeal raises the following issues:

1. constitutionality of the sentence as punishment for defendant's exercise of his right to trial by jury;

2. reasonableness of sentence; and,

3. absence of court's sentencing statement as order book entry.

The evidence at trial revealed that Leo, Indiana, residents Richard and Joyce Hetrick returned to their home one afternoon and observed an unfamiliar automobile parked in their driveway. They determined the front door to their house had been pried open, and observed that items inside the house were in disarray. Mrs. Hetrick called police as Mr. Hetrick took a rifle and apprehended defendant and one Benjamin Spencer (Spencer) upstairs. Hetrick observed a bulge in Spencer's shirt, ordered him to raise the shirt and discovered Spencer was carrying Hetrick's .45 caliber pistol. He made Spencer lay the pistol down, then ordered the two to follow him as he backed down the stairs. As they were exiting through the front door Spencer and defendant attacked. They beat and kicked Hetrick as they tried to wrestle the rifle from him. Hetrick's hand was cut by the rifle hammer when he fired it into the air to empty the chamber during the struggle. Mrs. Hetrick joined the affray and received bite wounds. Eventually the intruders subdued Mr. Hetrick, grabbed the rifle, and drove off, but police intercepted them minutes later. Mrs. Hetrick identified them and items in the automobile's trunk as having been taken from the Hetrick's home. Mr. and Mrs. Hetrick required medical treatment as a result of the struggle.

Defendant's jury trial began and concluded on April 11, 1984. Five days later, on April 16, 1984, Spencer signed a plea agreement which would result in an executed twenty-year sentence for class A burglary. On May 14, 1984, the defendant was sentenced by the Honorable Thomas L. Ryan, Judge, Allen Circuit Court, to fifty years imprisonment, the maximum term for a class A felony. The following day, May 15, 1984, the Honorable Alfred W. Moellering, Judge, Allen Superior Court, sentenced Spencer, in accordance with the plea agreement, to twenty years, thus granting him a leniency of ten years less than the presumptive sentence for class A burglary.[3]

ISSUE I

Defendant claims the disparity between the sentences imposed on him and Spencer demonstrates his sentence was based, at

1. Ind.Code § 35–43–2–1.

2. Ind.Code § 35–50–2–4.

3. Ind.Code § 35–50–2–4.

least in part, on his decision to proceed to jury trial rather than plead guilty, thereby punishing him for asserting Constitutional rights. Defendant relies on *North Carolina v. Pearce* (1969), 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656. Defendant's claim certainly raises questions concerning the sometimes difficult question of whether disparate sentences to accomplices demonstrate vindictiveness against a defendant who proceeds to trial as opposed to permissible leniency for a defendant who enters a plea bargain.

*Pearce* addressed, among other issues, the imposition of a substantially heavier sentence after retrial because the defendant obtained reversal of the initial determination on appeal or through post conviction procedures. Such practices were held to improperly deter convicted defendants from asserting their rights to appeal, and as such violated due process. A similar rationale was applied in *Thigpen v. Roberts* (1984), 468 U.S. 27, 104 S.Ct. 2916, 82 L.Ed.2d 23, and *Blackledge v. Perry* (1974), 417 U.S. 21, 94 S.Ct. 2098, 40 L.Ed.2d 628, asserting that a rebuttable presumption of prosecutorial vindictiveness, and thus a violation of due process, would arise where a defendant has been convicted of misdemeanors in a lower trial court then exercises the right to appeal for a trial de novo, only to have the prosecutor charge greater crimes.

In *United States v. Jackson* (1968), 390 U.S. 570, 88 S.Ct. 1209, 20 L.Ed.2d 138, the death sentence provision of the Federal Kidnapping Act was invalidated because death sentences could be imposed only following a jury trial and upon recommendation of the jury, whereas the maximum sentence for defendants who pled guilty or were found guilty after a bench trial was life imprisonment. The death sentence provision was held to be an "unnecessary" encouragement to plead guilty or waive a jury trial.

Subsequently, however, in *Bordenkircher v. Hayes* (1978), 434 U.S. 357, 98 S.Ct. 663, 54 L.Ed.2d 604, no Constitutional infirmity was found where the prosecutor filed a habitual offender charge after the defendant refused a plea bargain. It was there recognized that the state had "no more than openly presented the defendant with the unpleasant alternatives of foregoing trial or facing charges on which he was plainly subject to prosecution." 434 U.S. at 365, 98 S.Ct. at 669, 54 L.Ed.2d at 612. The decision stated:

> [B]y tolerating and encouraging the negotiation of pleas, this Court has necessarily accepted as constitutionally legitimate the simple reality that the prosecutor's interest at the bargaining table is to persuade the defendant to forego his right to plead no guilty.

434 U.S. at 364, 98 S.Ct. at 668, 54 L.Ed.2d at 611. Later the same year, *Corbitt v. New Jersey* (1978), 439 U.S. 212, 99 S.Ct. 492, 58 L.Ed.2d 466, upheld a statutory scheme providing defendants who pled non vult or nolo contendre to an indictment for first degree murder could be sentences to life imprisonment *or* 30 years imprisonment, the sentence for second degree murder, but providing a mandatory life sentence upon a conviction for first degree murder following a not guilty plea. The Court concluded:

> There is no doubt that those homicide defendants who are willing to plead non vult may be treated more leniently than those who go to trial, but withholding the possibility of leniency from the latter cannot be equated with impermissible punishment as long as our cases sustaining plea bargaining remain undisturbed. Those cases, as we have said, unequivocally recognize the constitutional propriety of extending leniency for a plea of not guilty and not of extending leniency to those who have not demonstrated those attributes on which leniency is based.

439 U.S. at 223–24, 99 S.Ct. at 500, 58 L.Ed.2d at 477.

More recently, in *Texas v. McCullough* (1986), —— U.S. ——, 106 S.Ct. 976, 89 L.Ed.2d 104, the Due Process Clause was held to be not violated when a state court defendant received a greater sentence on retrial, following the grant of defendant's

motion for new trial on the basis of prosecutorial misconduct. The court in *McCullough* refused to apply *Pearce*, noting that the defendant, exercising his rights under state law, was sentenced by the jury following the first trial, and by the judge following the second trial, thus precluding any "realistic motive for vindictive sentencing."

Similarly, Indiana case law has recognized the same principles. The importance of protecting the constitutional right to jury trial was emphasized in Judge Robertson's opinion in *Walker v. State* (1983), 454 N.E.2d 425, 429, *trans. denied:*

> It is well settled that to punish a person for exercising a constitutional right is "a due process violation of the most basic sort." ... Moreover, it is constitutionally impermissible for a trial court to impose a more severe sentence because the defendant has chosen to stand trial rather than plead guilty.... It is also clear that under appropriate circumstances, a defendant may receive a more severe sentence because the trial may reveal more adverse information about him than was previously known. However, a court may not impose a sentence that conflicts with a defendant's exercise of his constitutional right to a jury trial. (Citations omitted.)

The propriety of using leniency to encourage guilty pleas, however, has also been upheld. In *Gajdos v. State* (1984), Ind., 462 N.E.2d 1017, 1025, we stated:

> We have previously held that the State has a legitimate interest in encouraging the entry of guilty pleas. *Williams v. State* (1982), Ind., 430 N.E.2d 759. A defendant who enters a guilty plea "has extended a substantial benefit to the state and deserves to have a substantial benefit extended to him in return." *Id.*, 430 N.E.2d at 764. In *Morgan v. State*, (1981) Ind., 419 N.E.2d 964, we stated "that when the defendant proceeds to trial and his accomplice pleads guilty, the sentences need not be identical." *Id.*, 419 N.E.2d at 969.

■ Therefore, while leniency in sentencing is constitutionally permissible as an incentive for an otherwise proper plea of guilty, a more severe sentence may not be imposed upon a defendant because he foregoes the opportunity to plead guilty and exercises his right to trial by jury. Whether the severity of a particular sentence was improperly influenced by a defendant's jury trial election requires an individualized consideration. In the present case, we are not directed to, nor do we find, anything in the record indicating that the defendant's decision to proceed with jury trial affected the severity of the sentence ultimately imposed. We do not find any indication that the trial judge was involved in the defendant's plea negotiations, nor did the judge encourage the defendant to plead guilty, or threaten him with a more severe sentence if convicted following jury trial. The record of the sentencing hearing likewise includes nothing from which we could infer that the trial judge was punishing the defendant for going to trial. Rather, the court reviewed the facts of this case against defendant's substantial history of criminal activity. Absent a significant indicia that the defendant's exercise of his jury trial right may have contributed to the severity of his resulting sentence, we will not remand for resentencing upon this issue.

### ISSUE II

■ Ind.Code § 35–38–1–3 requires that if the trial court finds aggravating or mitigating circumstances, its record must include "a statement of the court's reasons for selecting the sentence that it imposes." The statement of reasons should contain three elements: a) identification of all significant mitigating and aggravating circumstances found, b) specific facts and reasons which lead the court to find the existence of each such circumstance, and c) articulation demonstrating that the mitigating and aggravating circumstances have been evaluated and balanced in determination of the sentence. *Hammons v. State* (1986), Ind., 493 N.E.2d 1250; *Jones v. State* (1984), Ind., 467 N.E.2d 681. Thor-

oughness and specificity in the sentencing statement facilitate meaningful appellate review. The trial court should not simply repeat statutory language. *Totten v. State* (1985), Ind., 486 N.E.2d 519; *Page v. State* (1981), Ind., 424 N.E.2d 1021.

■ In the instant case, the trial judge stated his reasons for imposing an aggravated sentence upon the defendant as follows:

COURT: All right. Addressing the comments that you made on behalf of your client, Mr. Roebel, that the results that occurred during and following the attempt to burglarize the Hetrick home were neither expected nor foreseeable. I find to be just as dangerous that kind of judgment, that impulsiveness is just as dangerous and makes him as much a threat to the safety of the community as that kind of judgment which is nevertheless premeditated or cold and calculated by the older and mature professional thief. There is no doubt in my mind that Mr. Hill is a professional thief. He has shown no evidence of being a productive member in this community. He has shown all the evidence of living off the productivity of others. Of sucking the sustenance of those who work every day and pay taxes and support our institutions and I've said once and I say again because this is an example and an appropriate time to say it that the streets belong to the people who pay for them. They do not belong to the thugs and thieves who would prey off the taxpayers. If that could be doubted, there could be no doubt that our homes still belong to us and when we return to them we have a reasonable expectation of returning in safety and security. Mr. & Mrs. Hetrick had all that reasonable expectation removed from them when they arrived home to see their house in the process of being looted and ransacked. The records of Mr. Hill as a juvenile beginning in March, March 24th, 1978, shoplifting apparently a finding on that on April 11, 1978, together with a false reporting charge of April the 21st, 1978.

A malicious treaspass [sic] offense of May 30th, 1979. A theft shoplifting offense July 19th, 1979. A theft for possession of stolen property June 4th, 1981. A vehicle theft October of 1981, with a disposition of November the 30, 1981, as indicated in the Pre-Sentence Investigation resulting in a dismissal of the burglary charge but a commission to, or a commitment to the Indiana Boys School, which was suspended with probation, official probation granted to him. Another shoplifting offense on January the 10th, 1982, with a disposition apparently of February the 2nd, 1982, with a commitment thereafter to the Indiana Boys School. With a theft offense on October the 6th, 1982. All of those are evidence to me that incarceration and in at least one instance formal probation has [sic] not benefited the defendant in any discernible respect. I see no likelihood of rehabilition [sic] of this individual. As I indicated, I find him to be a nonproductive liability upon his community. If he is to be that liability, then he might as well be that liability and isolated for as long as the law will permit from those who are responsible and who support that community. I therefore find that under the evidence, the trial of this cause the defendant is not a mere thief or a cat burglar but is both a dangerous and violent offender for the reason that the defendant's accomplice was armed with a concealed .45 caliber automatic hand weapon, which together with the rifle which the defendant and his companion stole and removed from the premises substantially increased the risk of fatal injury, although the complaining witness detained the defendant and his accomplice initially at the point of a rifle the defendant's companion wrested the rifle away and together with the defendant attacked Hetrick again increasing the risk of fatal injury during which a violent struggle ensued during which the defendant Hill struck and kicked Hetrick with muliple [sic] blows and under the evidence displayed in [sic] malicious intent displaying both intent and purpose

to seriously injury [sic] the owner of the premises who is merely acting reasonably in defense of his person and his property. The defendant and his companion escaped in a vehicle at a high rate of speed, which again posed an increase [sic] risk of injury to the users of the roads and to the highway. As a result of this conduct, the defendant and of his accomplice, Mrs. Hetrick was also injured during her reasonable exercise of the defense of her husband during the attack initiated by the defendant and his accomplice. Mr. Hetrick has sustained permanent injury and scaring [sic] as a result of the defendant and his accomplice's attack. The record of criminal conduct of the defendant while he was a juvenile and under the full age of 18 years is [sic] more specifically read into the record of this cause is evidence of disdain and [sic] social and legal responsibility and together with the act and the defense [sic] of which he stands before the Court convicted requires that the defendant not be a member of any community but shall be isolated therefore as long as the law shall permit to protect the best interest of society and its members. It is therefore the judgment of this Court that the defendant not being able to show any legal reason why sentence should not be pronounced, that he be adjudicated and decreed guilty of the offense of Burglary a Class A Felony as charged in the information and that he should be and he is hereby committed to the custody of the Indiana Department of Corrections for a period of 50 years[.]

■ The trial court's thoroughness in its statement of reasons satisfies our specificity requirements for appellate review. Significant aggravating circumstances are identified and discussed with reference to the supporting circumstances. While the trial court's statement does not identify and discuss any significant mitigating circumstances, we have not been directed to, nor do we discern, evidence in the record supporting the existence of any of the statutory mitigating factors. In the absence of mitigating factors, we cannot require the trial court's statement of reasons to articulate the balancing process between mitigating and aggravating factors.

■ Defendant next argues that the sentence is manifestly unreasonable. Under Rule 2 of the Ind.Rules for the Appellate Review of Sentences this Court will not revise a sentence authorized by statute unless the sentence is manifestly unreasonable. A sentence will not be considered manifestly unreasonable unless no reasonable person could consider such sentence appropriate for the particular offense and offender. In *Fointno v. State* (1986), Ind., 487 N.E.2d 140 (Givan, C.J. and Pivarnik, J., dissenting to reduction of sentence), and *Cunningham v. State* (1984), Ind.App., 469 N.E.2d 1, *trans. denied,* our courts have formulated a two-step procedure for applying this rule. If upon initial review of the record the appellate court determines the sentence may be manifestly unreasonable, the reviewing court will then peruse the record and determine, in light of all the factors relevant to the sentence, whether the sentence imposed was manifestly unreasonable. *Fointno,* 487 N.E.2d at 144–45; *Cunningham,* 469 N.E.2d at 8.

■ Applying the method of analysis adopted in *Fointno, supra.,* particularly considering that the defendant was only 18 years of age at the time of this burglary, and that this was his first adult felony conviction, we find, "at first blush," that the 50–year maximum sentence appears to be "disproportionate," that is, manifestly unreasonable in light of the offense and the character of the offender.

The presumptive sentence for class A felony is thirty (30) years imprisonment, which may be enhanced by up to twenty years for aggravating circumstances or reduced by as much as ten years for mitigating circumstances. Considering the particular offense and offender in this case, we note that the defendant a) was eighteen years of age, b) had not as an adult been convicted of a felony, c) was not armed during the perpetration of this offense, and d) was convicted of an A felony rather than

B felony because of injuries received by the Hetricks while defendant and his accomplice were seeking to avoid apprehension rather than as a direct result of force or threat of force in the commission of the burglary. The change in severity from B to A felony has already operated to enhance defendant's presumptive sentence from 10 to 30 years.

We conclude that imposing the maximum fifty-year sentence upon the defendant under the circumstances is manifestly unreasonable. This is the maximum available penalty for offenses other than murder, and we believe that the present offense and offender do not fall within the crimes and criminals for which such severity of punishment is intended. In view of the trial court's specific finding of aggravating circumstances, however, we are of the opinion that the sentence should be revised from fifty (50) years imprisonment to thirty-five (35) years imprisonment, consisting of the presumptive sentence of thirty (30) years plus enhancement of five years by reason of the aggravating circumstances found by the trial court.

### ISSUE III

■ Defendant contends that the trial court committed reversible error by failing to include a statement of reasons supporting the enhanced sentence in the court's order book. As set forth above, the trial judge's reasons were stated at the time of sentencing, and included in the transcript of the sentencing hearing. The statutory sentencing procedure prescribed by Ind. Code § 35–38–1–3 requires:

> The court shall make a record of the hearing, including:
>
> (1) A transcript of the hearing;
>
> (2) A copy of the pre-sentence report; and,
>
> (3) If the court finds aggravating circumstances or mitigating circumstances, a statement of the court's reasons for selecting the sentence that it imposes.

The statute does not expressly mandate that the statement of reasons must be separately set forth in the order book.

■ In cases where there is a complete or substantial lack of the required sentencing statement, we may remand to the trial court for written findings. *See, e.g., Page v. State* (1980), 274 Ind. 264, 410 N.E.2d 1304; *Abercrombie v. State* (1981), 275 Ind. 407, 417 N.E.2d 316. We have affirmed sentences in numerous cases, without remand for a separate entry of written findings, where an adequate sentencing statement was included in the sentencing hearing transcript. *See, e.g., Howard v. State* (1984), Ind., 459 N.E.2d 29; *Gajdos v. State* (1984), Ind., 462 N.E.2d 1017; *Frappier v. State* (1983), Ind., 448 N.E.2d 1188; *Pine v. State* (1980), 274 Ind. 78, 408 N.E.2d 1271; *Rowley v. State* (1979), 271 Ind. 584, 394 N.E.2d 928; *Gardner v. State* (1979), 270 Ind. 627, 388 N.E.2d 513. In apparent contrast, however, are cases reviewing the imposition of the death penalty. In deciding *Judy v. State* (1981), 275 Ind. 145, 416 N.E.2d 95, we initially required the trial court to supplement the record by making separate written findings and conclusions, notwithstanding the trial judge's verbal statement of reasons recorded in the sentencing transcript. This requirement of separate written findings has also been emphasized in three other death penalty cases, *Daniels v. State* (1983), Ind., 453 N.E.2d 160; *Schiro v. State* (1983), Ind., 451 N.E.2d 1047, 1053, *cert. denied* 464 U.S. 1003, 104 S.Ct. 510, 78 L.Ed.2d 699; *Brewer v. State* (1981), 275 Ind. 338, 356–57, 417 N.E.2d 889, 899.

■ By our decision today, we do not retract from our insistence that separate written findings are required in death penalty cases. More stringent procedural standards are entirely appropriate in a capital sentencing hearing than are required in non-capital matters. *State v. McCormick* (1979), 272 Ind. 272, 277, 397 N.E.2d 276, 280; *Griffin v. State* (1980), 273 Ind. 184, 187, 402 N.E.2d 981, 984; *Thompson v. State* (1986), Ind., 492 N.E.2d 264, 271. However, where the death penalty is not at issue, we hold that separate written findings are not required to be set forth in an order book entry, provided that an other-

wise full and adequate statement of reasons for selecting the sentence imposed is provided in the transcript of the sentencing proceedings.

 In the present case the sentencing record complied with the statutory requirement by including a statement of reasons upon which the trial judge based his decision to enhance the presumptive sentence. As discussed in Issue II above, the statement was sufficient to facilitate meaningful appellate review. We decline defendant's invitation to require the statement of reasons to be reiterated in a separate order book entry.

The conviction is affirmed, and the cause is remanded to the trial court, which is instructed to modify the sentencing order in a manner consistent with this opinion.

DeBRULER and SHEPARD, JJ., concur.

PIVARNIK, J., dissents and concurs with opinion in which GIVAN, C.J., concurs.

PIVARNIK, Justice, dissenting and concurring.

I must dissent from the majority in regard to Issue II and concur in result only in Issue III.

It appears to me that in Issue II, the majority is suggesting we substitute our judgment for that of the trial judge in imposing a sentence upon the Appellant. This is not our role and takes a position that I believe we have studiously avoided. It has not been our role, nor do I believe it is contemplated in the law, to make a determination on what we think a sentence ought to be for each and every defendant coming through our criminal system. Only if we find a sentence to be manifestly unreasonable in light of all the factors relevant to it, do we interfere. The majority states: "We believe that the present offense and offender do not fall within the crimes and criminals for which such severity of punishment is intended." We must note, however, that the Legislature has provided for such penalties upon the conviction of burglary, class A felony. The

trial court here clearly supported his conclusions based on the facts of Appellant's past record and the character that was therein revealed. It is umrealistic to find mitigation in that Appellant and his accomplice were seeking to avoid apprehension rather than as a direct result of force or threat of force in the commission of the burglary. The encounter, with resultant injuries to these victims, happened in the victims' home and as a direct result of Appellant and his accomplice being in the home to commit a burglary. It is not in the least unusual or unexpected that injury and death come to citizens in their homes in this manner. This is the very reason the Legislature has provided for a more severe penalty when one burglarizes a place of human habitation rather than a building where no one lives. The Legislature further provides for enhancement of the penalty in the burglary of a residence when the resident receives injury. This provides for a finding of class A felony, which provides for the sentence used by the trial judge here. Here, both husband and wife were injured by Appellant and his accomplice. Based on the facts of this crime and the aggravating circumstances detailed by the trial judge, I would not find his action so manifestly unreasonable that it should be set aside. Neither would I think my judgment is better than his in changing the enhancement to five years instead of twenty years.

I concur in result only with the majority in Issue III. Justice Dickson takes the position that this Court has held that the statement of the trial judge as to finding aggravating and mitigating circumstances must be in writing in a death penalty case, but need not be in writing in all other cases. The cases cited do not support that position. It continually has been the position of this Court that such a statement must be in writing in each and every case.

The only case that appears to support the majority's position is that of *Rowley v. State* (1979), 271 Ind. 584, 587, 394 N.E.2d 928, 931, written in 1979, very shortly after our new criminal code imposing this type of review. There, Justice Hunter, speaking

for the Court, did indicate that the statement the judge gave supporting his aggravating the penalty came from the record of the sentencing hearing, and that would be sufficient.

In 1981, we were faced with a death penalty case in *Judy v. State*, (1981), 275 Ind. 145, 416 N.E.2d 95, in which we found that the statement of reasons to be given by the trial court, pursuant to statutory enactment of the Legislature, meant that that statement must be in writing as a part of the sentencing order. *Id.* 275 Ind. at 167, 416 N.E.2d at 108. We did not say it applied only in death penalty cases, but expressly said it applies in all cases. *Gardner v. State* (1979), 270 Ind. 627, 633, 388 N.E.2d 513, 517, was also written in 1979. It held the trial court must state its reasons for aggravating a sentence, but did not say whether or not they needed to be in writing in the sentencing order. Again, this was prior to 1981. All cases cited by Judge Dickson following the *Judy* case have so held. *Page v. State*, (1980), 274 Ind. 264, 269, 410 N.E.2d 1304, 1308, was written just before *Judy* but still stated:

> "The sentencing record before us contains no statement concerning aggravating circumstances to support the imposition of the enhanced sentence as required by the statute. The cause is remanded therefore with instructions that the trial court enter his findings, if any, supporting the enhanced sentence, or in the alternative reduce defendant's sentence to the basic term of ten years."

*Page* was the beginning of our discernment that the intention of the Legislature was that the statement of reasons referred to in the statutory language meant the statements would be articulated by the trial judge in his sentencing order. In *Judy*, of course, we found that in order to conform to the standards of the United Stated Supreme Court in imposing the death penalty, we must have a review process found adequate in *Gregg v. Georgia*, (1976), 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859; *Proffitt v. Florida*, (1976), 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913; and *Furman v. Georgia* (1972), 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346. We found therein that our rules provided for a statement of reasons by the trial judge *in writing* in all cases. In *Frappier v. State* (1983), Ind., 448 N.E.2d 1188, 1189, we stated: "Indiana Code § 35–4.1–4–3 requires the trial court to make a record of the sentencing hearing and to make 'a statement of the court's reasons for selecting the sentence it imposes.'" A trial court is required to make a specific and individualized statement of reasons, the purpose of which is to facilitate appellate review. *Citing Page*, 274 Ind. at 269, 410 N.E.2d at 1308. A mere recitation of the statutory standards is insufficient. If the statement supporting enhancement of the standard sentence is insufficient, the case will be remanded for a more specific statement or the imposition of the standard review. *Frappier* then goes on to say that the court had properly met these standards. Apparently, the majority is concerned because the case did not say, "in writing." This Court already had said "in writing" in several cases, and now used the language, "make a specific and individualized statement of reasons" citing previous cases. *Frappier*, Ind., 448 N.E.2d at 1189. The same is true in *Pine v. State* (1980), 274 Ind. 78, 84, 408 N.E.2d 1271, 1275. This was before *Judy* but still said that the sentencing statement must be made by the trial judge. It did not say whether or not it was in writing there, but as I stated, this was *pre-Judy;* the rule had not been established. *See also Abercrombie v. State* (1981), 275 Ind. 407, 414, 417 N.E.2d 316, 320. In *Abercrombie*, we found the court did not state its reasons for aggravating the sentence, and remanded with instructions for the court to grant a new sentencing hearing and "enter sufficient findings to support the sentence imposed." This Court continually has held, since 1981, that the statement of reasons by the trial court must be in writing. The cases cited by the majority discuss what the statement must contain. There is no inference that the statement need not be in writing by virtue of the fact that some cases did not expressly say "in writing."

In fact, our intention was illustrated by our reference to previous holdings that required the statement to be in writing. We have remanded many, many, cases, ordering the trial judge to make his statement of reasons in the sentencing order when the record showed that he did not do so, but had made his statement in open court during sentencing and the only evidence in the record was a transcript of that sentencing hearing. I would say this may have been done dozens of times by all members of the Court. In addition, we specifically discussed this problem in our district hearings throughout the State a couple of years ago, in which we instructed all trial judges at the meetings that the statement of reasons must be in writing in all cases. The fact that *Howard v. State* (1984), Ind., 459 N.E.2d 29, 32–33, appeared to affirm the judgment of the trial court even though the trial judge did not express his reasons in writing, is not good authority for the proposition that the rule does not require it. *Howard* is a departure from our usual handling, and more seems to say that it was harmless error in that case than it says that we are abandoning the rule.

If we read all of the cases from *Judy* on with the exception of *Howard,* the common thread to all of them is that the trial court must give a statement of reasons and that this must be a particularized statement by the trial judge. Some of the cases say "in writing" and some do not use those two words. The meaning of all of them has always been that it must be in writing. I find it untenable that, at this point, we are going to summarily say that it needs to be in writing in death penalty cases, but does not need to be so in any other. First, I see no reason for now changing the rule as it is well established by trial courts throughout the State, and makes a good and proper record, not only for our review, but for a permanent record in the order books of the courts for future appeals and post-conviction petitions. With the tendency toward high penalties that we have in many, cases, it is important that this record be there. Furthermore, if the majority feels this rule needs to be changed, there ought to be some good explanation for it this far down the road. After holding in all of these cases that the judge must make a particular finding and requiring it to be in writing, plus the many, many times we have remanded, ordering the trial judge to do just this, I think the trial field would be hard put to guess "where we're coming from" to just summarily find that this requirement is not necessary and to find that the rule we have interpreted means something different depending on the case to which it is applied.

I have as yet seen no good reason why we should change this well established rule.

GIVAN, C.J., concurs.