Pursuant to Ind.Appellate Rule 65(D),
this Memorandum Decision shall not be
regarded as precedent or cited before
any court except for the purpose of
establishing the defense of res judicata,
collateral estoppel, or the law of the case.



ATTORNEY FOR APPELLANT:

**ANDREW J. BALDWIN**
Baldwin Adams & Kamish
Franklin, Indiana

ATTORNEYS FOR APPELLEE:

**GREGORY F. ZOELLER**
Attorney General of Indiana

**MICHAEL GENE WORDEN**
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| MARON JACKSON, | ) | |
| | ) | |
| Appellant-Defendant, | ) | |
| | ) | |
| vs. | ) | No. 49A02-1405-CR-296 |
| | ) | |
| STATE OF INDIANA, | ) | |
| | ) | |
| Appellee-Plaintiff. | ) | |

APPEAL FROM THE MARION SUPERIOR COURT CRIMINAL DIVISION 2
The Honorable Marc T. Rothenberg, Judge
Cause No. 49G02-1303-MR-018733

**December 11, 2014**

**MEMORANDUM DECISION - NOT FOR PUBLICATION**

**FRIEDLANDER, Judge**

Maron Jackson appeals his conviction and sentence for murder. He presents the following consolidated and restated issues for review:

1.  Did the trial court abuse its discretion when it admitted certain evidence over Jackson's Ind. Evidence Rule 404(b) objection?

2.  Is Jackson's fifty-eight year sentence inappropriate?

We affirm.

Around noon on March 13, 2013, Corey Edwards drove his cousin, Robert Mitcham, to a pawn shop and then to a house near 86th Street and Lafayette Road in Indianapolis. Edwards waited in his car while Mitcham spoke with Jackson for five to ten minutes in the driveway. Edwards did not know Jackson but had seen him on one prior occasion with Mitcham at that same house. When the seemingly cordial conversation between Mitcham and Jackson ended, Edwards and Mitcham drove away.

Shortly after arriving back at Mitcham's house, Mitcham received a phone call and then asked Edwards for a ride to Lafayette Square Mall. Edwards drove to the mall, and Mitcham rode in the passenger seat. While talking on the phone, Mitcham directed Edwards to look for a green, four-door car in the mall parking lot. The parking lot was not busy, and they eventually found the green car with two people inside. Edwards parked one car down from the green car.

Earlier, Daniel Sanon had been hanging out with his friend Dominique Hughes when Hughes received a phone call. In exchange for gas money, Sanon agreed to give Hughes a ride. The two then traveled in Sanon's green Buick Century to a house in the area of 86th Street and Lafayette Road. At that house, Jackson, whom Sanon had not met

2

before, got in the back seat of Sanon's car. Jackson spoke on his cell phone during the ride to Lafayette Square Mall.[1] Sanon parked at the mall and left Jackson and Hughes in the car. Jackson requested that Sanon leave the keys, which he did.

After Edwards and Mitcham parked, Jackson exited Sanon's car and approached the front passenger side of Edwards's car. Mitcham and Jackson engaged in greetings, and then Jackson asked Edwards for permission to get in. Edwards agreed, and Jackson entered through the rear passenger-side door and sat behind Mitcham. As Mitcham turned around asking Jackson about money, Edwards saw that Jackson had a gun and yelled for Mitcham to watch out. Jackson fired one shot. The bullet went through Mitcham's headrest and into his chest. Jackson then fled in Sanon's car, as Hughes ran into the mall to find Sanon. Mitcham died at the scene.

Shortly after police responded to the shooting, Sanon called 911 from a nearby store and reported that his car had been stolen. Sanon did not tell police the truth in his initial statement and did not mention Jackson until later. When his car was discovered the following week, Sanon gave police permission to search it. During the search, police recovered court papers in the backseat that Jackson had received on the morning of the shooting.

A jury found Jackson guilty of Mitcham's murder on March 18, 2014. Thereafter, the trial court sentenced Jackson to fifty-eight years in prison. Jackson appeals both his conviction and sentence.

---

[1] Cellphone records later established that Jackson and Mitcham were communicating during this time.

3

1.

At trial, Jackson objected to the admission of the papers recovered from Sanon's car. The papers were court documents that Jackson had received on the morning of the shooting. The State sought to admit the papers, which had Jackson's fingerprints on them, as evidence that Jackson had been in Sanon's car the day of the shooting. Jackson objected on Evid. R. 404(b) grounds because the documents generally referenced a pending criminal case involving Jackson.[2]

The trial court admitted the documents over Jackson's objection, noting that they did not reference the charges or "any identifying information as to what type of case [it] is". *Transcript* at 244. Upon admitting the evidence, the court first informed the jury of the parties' stipulation that the papers found in the car had been created on the morning of the March 13, 2013 and given to Jackson at approximately 8:30 that morning. The court then provided the jury with the following limiting instruction:

> [These exhibits] are being entered into evidence by the State for the purposes of proving opportunity and identity of the Defendant. These exhibits contain information beyond the relevance of those purposes. This additional information is in no way to be considered in this case as evidence of the character of the Defendant or the Defendant's guilt in this matter. Further, you are not to speculate as to what this additional information relates to as it is irrelevant to this cause. These items are only to be used – I'm sorry. Are to be used for identification and opportunity purposes only.

*Id*. at 255. Jackson contends that admission of this evidence violated Evid. R. 404(b).

At the time of Jackson's trial,[3] Evid. R. 404(b) provided:

---

[2] Only a photograph of the stapled documents are in the record before us. A small top sheet indicates that the case had been continued and provides information for the new court date. The bottom sheet is difficult to read, but it appears to provide information regarding Jackson's public defender.

[3] Evid. R. 404 was amended effective January 1, 2014.

> Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon such request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pre-trial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial.

In assessing the admissibility of evidence under this rule, the trial court must: (1) determine whether the evidence is relevant to a matter at issue other than the defendant's propensity to commit the charged act and (2) balance the probative value of the evidence against its prejudicial effect. *Halliburton v. State*, 1 N.E.3d 670 (Ind. 2013). We review the trial court's 404(b) ruling for an abuse of discretion. *Inman v. State*, 4 N.E.3d 190 (Ind. 2014).

The evidence at hand was relevant for purposes other than propensity. In fact, the nature of the documents was entirely irrelevant to the State's case. The State admitted them to show that an object Jackson obtained possession of on the morning of the murder was found in the backseat of Sanon's car with Jackson's fingerprints. This evidence backed up Sanon's testimony that he had driven Jackson, someone he had not met before, to the mall.[4] The evidence helped place Jackson at the scene with an opportunity to commit the crime.

The trial court recognized that the documents referenced prejudicial information that the jury might use for the unintended purpose of establishing Jackson's criminal

---

[4] During cross-examination, defense counsel questioned Sanon regarding inconsistencies between his two statements to police, noting that he initially denied that Jackson had been in his car. Counsel continued this line of questioning with a detective who had interviewed Sanon. Further, on cross-examination of the DNA expert, counsel established that the expert was unable to positively identify Jackson as being in Edwards's car where the shooting occurred. Contrary to Jackson's assertion on appeal, his presence at the scene was challenged at various instances during trial.

propensity or general bad character. The limiting instruction provided by the trial court properly circumscribed the jury's use of this evidence, which only generally referenced Jackson's involvement in another criminal matter. Balancing the probative value on the issues of identity and opportunity against the potential danger of unfair misuse, we cannot say that the trial court abused its discretion when admitting the challenged evidence.

2.

Jackson contends that his fifty-eight-year sentence is inappropriate in light of his character and the nature of his offense. Article 7, section 4 of the Indiana Constitution grants our Supreme Court the power to review and revise criminal sentences. *See Knapp v. State,* 9 N.E.3d 1274 (Ind. 2014), *cert. filed.* Pursuant to Ind. Appellate Rule 7, the Supreme Court authorized this court to perform the same task. *Cardwell v. State,* 895 N.E.2d 1219 (Ind. 2008). Per App. R. 7(B), we "may revise a sentence authorized by statute if, after due consideration of the trial court's decision, the Court finds that the sentence is inappropriate in light of the nature of the offense and the character of the offender." *Inman v. State,* 4 N.E.3d at 203 (quoting App. R. 7(B)). "Sentencing review under Appellate Rule 7(B) is very deferential to the trial court." *Conley v. State,* 972 N.E.2d 864, 876 (Ind. 2012). Jackson bears the burden on appeal of persuading us that his sentence is inappropriate. *Conley v. State,* 972 N.E.2d 864.

We initially observe that the statutory sentencing range for murder is forty-five to sixty-five years, with an advisory sentence of fifty-five years. Ind. Code Ann. § 35-50-2-3(a) (West, Westlaw current with all 2014 Public Laws of the 2014 2nd Regular Session &

2nd Regular Technical Session of the 118th General Assembly). Thus, Jackson's fifty-eight-year sentence is slightly above the advisory.

With respect to the nature of the crime, Jackson appears to argue that when viewed in the context of other murders, the instant murder was not particularly heinous. Even assuming this to be true, his character supports the aggravated sentence. By twenty-four years of age, Jackson had already accumulated a significant criminal history with two felony convictions (both theft) and six misdemeanors (alcohol offense, resisting law enforcement, battery with bodily injury, invasion of privacy, harassment, and battery). Moreover, he has had probation revoked twice (2009 and 2012), as well as home detention revoked (2010). He has had several stints in prison but has remained undeterred in his criminal pursuits. Jackson admitted that prior to his arrest he had been supporting himself financially by selling drugs. Finally, as observed by the trial court, Jackson's attitude at sentencing is indicative of his poor character.[5] *See Totten v. State*, 486 N.E.2d 519 (Ind. 1985) (defendant's attitude in court may be considered as an aggravating factor). In sum, we conclude that Jackson's sentence is not inappropriate.

Judgment affirmed.

KIRSCH, J., and CRONE, J., concur.

---

[5] The trial court stated at the sentencing hearing: "The way you sit here today unmoved, unfazed, even by your own family's testimony much less the victim's family. How you do sit there with a grin on your face." *Transcript* at 420. Later, the court noted that during sentencing Jackson sat "slumped over … smirking". *Id*. at 421.