NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

—————————

No. 15-2593

—————————

UNITED STATES OF AMERICA

v.

ROBERT RUSSELL SPENCE,
                                                    Appellant

—————————

On Appeal from the United States District Court
for the Western District of Pennsylvania
D. C. Criminal No. 2-09-cr-00105-023
District Judge: Honorable David S. Cercone

—————————

Submitted under Third Circuit LAR 34.1(a)
on January 26, 2017

Before:  CHAGARES, RESTREPO and ROTH, Circuit Judges

(Opinion filed: July 13, 2017)

—————————

OPINION[*]

—————————

ROTH, Circuit Judge

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

## I. Introduction

Robert Russell Spence, Jr., was a key figure in a large cocaine distribution network. He received shipments of cocaine from California, and he passed them on to distributors in Pennsylvania. In 2014, he was tried and convicted of conspiracy to distribute five kilograms or more of cocaine and conspiracy to engage in money laundering. He now appeals on four grounds. Because we find no merit in any of Spence's arguments, we will affirm the judgment of the District Court.

## II. Background

The essential facts are not in dispute. From about 2000 to 2010, interrupted only by a relatively short term in prison, Spence was a central player in a cocaine distribution scheme. In this scheme, various individuals transported cocaine from California to Spence in western Pennsylvania; in exchange, Spence arranged for money to be sent back to California. Spence, in turn, sold the cocaine to a middleman who resold it. At the same time, Spence attempted to run several legitimate businesses, including a high-end car rental agency.

In May 2009, Spence rented a warehouse at 621 Plum Street in Oakmont, Pennsylvania. Inside, he stored many items related to the cocaine operation, including a van registered to Cortorra Brownfield, with whom Spence ran a real estate business. On February 9, 2010, pursuant to a search warrant, federal agents raided the warehouse. The search warrant originally included authorization to search "any abandoned or parked vehicles within the property, or within its curtilage," but that phrase had been crossed out

2

and initialed by a federal agent at the direction of a magistrate judge. Nonetheless, the agents conducted a protective sweep of the van. When they entered it, they saw drug paraphernalia in plain view.

After this raid, Spence became aware that he was being investigated. Around this time, he recorded several phone calls between himself and other individuals involved in the drug trade.

On March 31, 2010, Spence was charged by way of complaint, and then on April 28, 2010, charged in a one-count indictment with possession with intent to distribute five kilograms or more of cocaine in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii). On March 29, 2012, he was charged in a second superseding indictment with (1) conspiracy to distribute and possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. § 846; (2) conspiracy to engage in money laundering involving proceeds of the drug conspiracy, in violation of 18 U.S.C. § 1956(h); and (3) possession with intent to distribute five kilograms or more of cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A)(ii).

Spence filed over one hundred motions, one of which was a motion to suppress the evidence obtained in the search of the van within the warehouse at 621 Plum Street. After a suppression hearing, the District Court ruled that he had no standing to challenge the search of the van, because he did not own it.

As the case proceeded, Spence was appointed counsel. He then decided to proceed *pro se* at trial, and his appointed counsel remained as standby counsel. At the trial, during Spence's cross-examination of the prosecution's first witness, the District

3

Court expressed concern about Spence's questioning. The District Court described the questions as "marginally relevant," "repetitive," "confusing," and "problematic." The District Court then decided to limit the length of Spence's cross-examination to "equal the time given for direct examination." Spence contends that the District Court's decision was not fair.

During trial, the government played a recording that Spence had made of one of his phone calls. The government had obtained the recording at the time of Spence's arrest. When Spence later sought to play another such recording, the prosecutor opined that the recordings were made in violation of Pennsylvania's Wiretap Act—because only one side of the conversation, Spence, consented to the recording—but that they were not made in violation of federal law and, thus, were admissible. Spence, upon hearing that making and playing the recordings violated state law, moved for a mistrial because the prosecution had already played one such recording. The motion was denied. **[App. 2273-2277, 2282.]**

After a two-week trial, the jury returned a verdict of guilty on the first two counts, namely conspiracy to distribute five kilograms or more of cocaine and conspiracy to engage in money laundering. The jury deadlocked on the third count, possession with intent to distribute five kilograms or more of cocaine.

For sentencing, the United States Probation Office conducted a presentence investigation and prepared a presentence report. The report calculated Spence's total offense level as 48, higher than the maximum level on the sentencing table. Thus, his

total offense level was reduced to the maximum of 43, for which the Sentencing Guidelines recommend a sentence of life imprisonment.

Spence filed several objections to the presentence report, none of which are relevant here, and the District Court rejected them. On June 11, 2015, the District Court held a sentencing hearing, at which Spence asked for leniency. The District Court sentenced him to twenty years' imprisonment, varying downward from the range recommended by the Sentencing Guidelines for several reasons. One reason was to avoid unwarranted sentencing disparities between Spence and other defendants who were part of the same cocaine distribution network. Spence did not object to the sentence when it was announced.

Spence appealed. He raises four issues on appeal: (1) his motion to suppress the evidence from the search of the van should have been granted because the search was in violation of the Fourth Amendment, (2) the time limits placed on his cross-examination violated his Sixth Amendment Confrontation Clause rights, (3) his motion for a mistrial should have been granted, and (4) his sentence was unreasonable.

### III. Discussion

### A. Standard of Review

As to the first issue, "we review a district court's denial of the motion to suppress for clear error as to the underlying facts, but exercise plenary review as to its legality in

light of the court's properly found facts."[1] As to the third issue, we review for plain error. As to the second and fourth issues, Spence argues that the appropriate standard of review is abuse of discretion, while the government argues that the standard of review is plain error because the Spence did not properly raise objections in the District Court. We need not resolve this dispute, because none of the District Court's decisions was an abuse of discretion, much less plain error.

### B. Search of the Van

Spence argues that the District Court erred in not granting his suppression motion regarding the evidence obtained from the search of the van because he claims that the evidence was obtained in violation of the Fourth Amendment.[2] The government responds that the District Court did not err, but even if it did, any error was harmless. In general, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded."[3] If we determine, beyond a reasonable doubt, that "the error complained of did not contribute to the verdict obtained[,]" then the error was harmless and the conviction should be affirmed.[4]

Here, no evidence from the search of the van was introduced at trial. Hence, we can determine beyond a reasonable doubt that the trial would have been identical if the

---

[1] *United States v. Wilson*, 413 F.3d 382, 385 (3d Cir. 2005) (quoting *United States v. Givan*, 320 F.3d 452, 458 (3d Cir. 2003)) (internal quotation marks and brackets omitted).
[2] *See Herring v. United States*, 555 U.S. 135, 144 (2009) (holding that evidence obtained in flagrant or deliberate violation of the Fourth Amendment must be suppressed).
[3] Fed. R. Crim. P. 52(a).
[4] *United States v. Stevenson*, 832 F.3d 412, 427 (3d Cir. 2016) (quoting *Chapman v. California*, 386 U.S. 18, 24 (1967)) (internal quotation marks omitted).

suppression motion had been granted. Consequently, even assuming *arguendo* that the District Court had erred in denying the suppression motion, the error did not contribute to the verdict obtained and was harmless.

## C. Time Restriction on Cross-Examination

Spence argues that the District Court's time restriction on his cross-examination— limiting him to the same time as that used by the government on direct examination—was improper under the Confrontation Clause of the Sixth Amendment. That Clause provides that "in all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . .."[5] The right to confrontation includes a right to cross-examine witnesses.[6] However, "the right to confront and to cross-examine is not absolute and may, in appropriate cases, bow to accommodate other legitimate interests in the criminal trial process."[7] Specifically, "[t]he right of cross-examination is tempered by policy considerations relating to unfair prejudice, confusion of triable issues, undue delay, presentation of cumulative evidence, and concern that the jury may be misled."[8]

These policy considerations were the very concerns that drove the District Court to impose its time restriction on Spence. The District Judge said to Spence, before imposing

---

[5] U.S. Const. amend. VI.

[6] *Bruton v. United States*, 391 U.S. 123, 126 (1968) ("'[T]he right of cross-examination is included in the right of an accused in a criminal case to confront the witnesses against him' secured by the Sixth Amendment . . ..") (quoting *Pointer v. State of Texas*, 380 U.S. 400, 404 (1965)).

[7] *Chambers v. Mississippi*, 410 U.S. 284, 295 (1973) (citing *Mancusi v. Stubbs*, 408 U.S. 204 (1972)).

[8] *Miranda v. Cooper*, 967 F.2d 392, 402 (10th Cir. 1992). *See also United States v. Whitmore*, 359 F.3d 609, 615-16 (D.C. Cir. 2004) ("The district court . . . has considerable discretion to place reasonable limits on a criminal defendant's presentation of evidence and cross-examination of government witnesses.").

the time restriction, "[Y]our cross-examination[] is taking an excessive amount of time. I find that . . . many of [your questions] are marginally relevant, . . . some . . . are repetitive, I think they are confusing, and they are just problematic." The judge then said, "My main concern is the time factor. I'm going to manage my docket by limiting the length of your cross-examination to equal the time given for direct examination." Based on these statements, we conclude that the District Court was considering the proper factors in making this decision. Furthermore, the District Court's decision was amply supported by the record. Up to that point, Spence had taken up a large amount of time asking confusing, repetitive, or only marginally relevant questions. For these reasons, the District Court's decision was not an abuse of discretion.

Spence argues that, as a *pro se* litigant, he should have been given more time than was the government because his expertise is less than that of a prosecutor. He argues that the District Court should have made an individualized determination for each witness whether Spence had been given enough time for a reasonable cross-examination, and it should have cut off questioning only when it decided that Spence's questions had reached the point of diminishing returns.[9] However, even assuming *arguendo* that Spence is correct that the District Court so erred, we conclude that the error was harmless. Spence has not suggested any potentially fruitful line of questioning that he was unable to pursue due to the time limits, and we cannot imagine any.

### D. Motion for a Mistrial

---

[9] *See United States v. Vest*, 116 F.3d 1179, 1187 (7th Cir. 1997).

Spence argues that his motion for a mistrial based on the government's playing his recording of a phone call should have been granted.[10] He claims that the government failed to lay a proper foundation for the admissibility of the recording because if the recording was made for the purpose of committing a crime, it would be inadmissible and the government never introduced evidence regarding the purpose of the recording. He further argues that permitting the government to play an inadmissible recording is so prejudicial that it deprived him of his fundamental right to a fair trial and therefore warranted a mistrial.[11]

An objection to the admission of evidence for lack of foundation ordinarily must be made when the evidence is initially offered[12] because a defendant who fails to object at the time the evidence is offered "deprive[s] the Government of any opportunity to lay a proper foundation."[13] Here, Spence objected to the lack of foundation only on appeal. At this point, "the objection is waived and we will review the admission of evidence only for plain error."[14] There is no plain error here. Even assuming *arguendo* that the government should have laid a foundation for the admission of the recording, any error

---

[10] He does not argue, as he did below, that the motion should have been granted because playing the recording was illegal under state law.

[11] *See United States v. Xavier*, 2 F.3d 1281, 1285 (3d Cir. 1993).

[12] *United States v. Bay*, 762 F.2d 1314, 1317 (9th Cir. 1984) ("[I]f, when evidence is offered, there is no objection based on lack of a foundation, and the evidence is received, the point is not available on appeal." (citing *United States v. Valdivia*, 492 F.2d 199, 208 (9th Cir. 1973))).

[13] *United States v. Morton*, 391 F.3d 274, 277 (D.C. Cir. 2004) (citing *Bartleson v. United States*, 96 F.3d 1270, 1278 (9th Cir. 1996)).

[14] *Government of the Virgin Islands v. Archibald*, 987 F.2d 180, 184 (citing *United States v. Young*, 470 U.S. 1, 13-14 (1985)).

was harmless because Spence told the jury that he made the recording for a lawful purpose.

## E. Reasonableness of Sentence

Spence argues that his sentence is unreasonable because other members of the drug trafficking conspiracy who may have been more culpable were given equal sentences, and those who may have been equally culpable were given lesser sentences.

We review sentences for reasonableness. Procedurally, a sentencing court must, among other things, consider the relevant statutory factors,[15] which include "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . .."[16] The District Court specifically cited this factor as one it considered in formulating its sentence. Although the other defendants who took part in the conspiracy were sentenced to equal or lesser terms of imprisonment, the other defendants pleaded guilty. A court may "extend[] leniency in exchange for a plea of guilty and . . . not extend[] leniency to those who have not demonstrated those attributes on which leniency is based."[17] Even if the other conspirators were identically situated to Spence, their guilty pleas could justify a difference in sentences. Thus, we conclude that the District Court adequately considered the disparity factor.

## IV. Conclusion

For the foregoing reasons, we will affirm the judgment of the District Court.

---

[15] *See United States v. Flores-Mejia*, 759 F.3d 253, 256 (3d Cir. 2014).
[16] 18 U.S.C. § 3553(a)(6).
[17] *Corbitt v. New Jersey*, 439 U.S. 212, 224 (1978).